1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

10
11

NICHOLAS MILLAN, on behalf of
himself and others similarly situated,

Plaintiffs,

v.

CASCADE WATER SERVICES, INC.;
and DOES 1 to 10, Inclusive,

Defendants.

**1:12-cv-01821-AWI-GSA**

**FINDINGS AND RECOMMENDATIONS
REGARDING PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT**

(ECF. No. 31)

OBJECTIONS DUE WITHIN FIFTEEN (15)
DAYS

12
13
14
15
16
17
18

## I.  INTRODUCTION

Plaintiff Nicholas Millan ("Plaintiff"), on behalf of himself and others similarly situated,
filed this class action complaint against Defendant Cascade Water Services, Inc. ("Defendant")
alleging violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code, and
California Business and Professions Code § 17200. Currently before the Court is Plaintiff's
Motion for Preliminary Approval of Class Settlement (the "Motion"). The Court has reviewed the
Motion and its supporting papers and, for the reasons discussed below, RECOMMENDS that the
Motion be DENIED WITHOUT PREJUDICE.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initially filed this action on November 6, 2012 and the currently operative version

1

1   of the Complaint, the second amended complaint, was filed on January 10, 2014 (the "SAC").

2   (ECF Nos. 1 & 30-1.) In the SAC, Plaintiff alleges a federal claim under the FLSA for overtime

3   and record keeping violations (the "FLSA Claim"), as well as California state law claims for: (1)

4   violations of California's Unfair Competition Law (Business and Professions Code § 17200); (2)

5   failure to pay overtime (Labor Code §§ 510, 1194, 1194.5); (3) failure to provide meal breaks

6   (Labor Code § 226.7); (4) failure to provide rest breaks (Labor Code § 226.7); (5) violations of

7   California record-keeping provisions (Labor Code §§ 226, 1174, 1174.5); (6) waiting time

8   penalties (Labor Code §§ 201-203); and (7) penalties under the Private Attorney General Act

9   ("PAGA") (Labor Code § 2698 *et seq.*) (collectively, the "California Claims"). (*Id.*)

10       After conducting written discovery and an exchange of documents, the parties entered into

11   settlement negotiations, where they engaged in further informal information exchanges. (Joint

12   Stipulation of Class Action Settlement and Release ("Joint Stipulation") 13:13-18, ECF No. 31-

13   1.) As a result of these negotiations, the parties entered into a joint stipulation to settle the case

14   and release all claims, including both the FLSA and state law claims. (Joint Stipulation, ECF No.

15   31-1.)

16       The current Motion, which was filed by Plaintiff, and is not opposed by Defendant, is the

17   result. Attached as supporting exhibits to the Motion are: (1) a declaration by Darren M. Cohen,

18   Plaintiff's counsel; (2) the Joint Stipulation; (3) a sample Settlement Claim Form/Consent to Join

19   (the "Claim Form"); and (4) a Notice of Pendency of Settlement of Class Action, Settlement

20   Hearing; Consent, and Exclusionary Procedures (the "Notice").

21       According to counsel's declaration, Defendant is a water treatment company. (Declaration

22   of Darren M. Cohen ("Cohen Decl.") ¶ 19, ECF No. 31-2.) As part of its operations within the

23   state of California, Defendant employs Facilities Maintenance Technicians ("Technicians"), who

24   travel between client sites over the course of the workday. *Id.* Plaintiff is one such Technician. *Id.*

25   at ¶ 20. Plaintiff is currently employed by Defendant and has worked for Defendant since May 1,

26   2009. *Id.* He is paid on an hourly basis and is classified by Defendant as a non-exempt employee

27   entitled to overtime. *Id.* Plaintiff performs the majority of his duties for one of Defendant's

28   clients, Southern California Edison, he schedules his own work hours and records the time he

works and travels on time sheets. *Id*. It is unclear from the Motion or other supporting papers whether any other Technicians perform the majority of their duties for a single client. It is also unclear whether other Technicians are able to schedule their own work at their leisure or record their own work or travel time.

Plaintiff bases his lawsuit on the assertion that "Defendant failed to properly compensate each and every Technician wages and/or overtime when [they] provided services to more than one client per day." *Id*. at ¶ 21. He also alleges that "Defendant failed to properly provide meal and rest breaks to Technicians." *Id*. at ¶ 22. Defendant contests these allegations. *Id*. at ¶¶ 21, 22. Nonetheless, Defendant has stipulated and agreed "to the conditional class and collective certification of the Action for purposes of this Settlement only."[1] (Joint Stipulation of Class Action Settlement and Release 12:24-25, ECF No. 31-1.)

## III.   DISCUSSION

Strong judicial policy favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge"). There are two phases in the review of a proposed class settlement. *True v. Amer. Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). In the preliminary stage, the court must determine "whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *Id*. at 1063, *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981). At the second, final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments to make a final fairness determination. *Id*.

Where settlement occurs prior to class certification, courts must hold the settlement agreement to a "higher standard of fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry"). Because a settlement agreement

---

[1] Although the parties have signed a joint stipulation, the Motion is brought solely by Plaintiff.

1  negotiated before formal class certification risks a breach of the duty owed to the class, "such

2  agreements must withstand an even higher level of scrutiny for evidence of collusion or other

3  conflicts of interest than is ordinarily required . . . before securing the court's approval as fair."

4  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013), *quoting In re*

5  *Bluetooth Headset Prods. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

6       The Court's initial task, then, must be to "assess whether a class exists." *Staton v. Boeing*

7  *Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("such attention is of vital importance, for a court asked to

8  certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the

9  class, informed by the proceedings as they unfold"). Because this case asserts claims under both

10  the FLSA and California state law the discussion of certification must take place in two parts:

11  First, certification of the collective action for the FLSA Claim, and second, certification of the

12  California Claims under Rule 23 of the Federal Rules of Civil Procedure. *Thiessen v. Gen. Elec.*

13  *Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (finding that FLSA claims are certified

14  under a different standard than claims falling within the reach of Rule 23 because "Congress

15  clearly chose not to have the Rule 23 standards apply . . . and instead adopted the 'similarly

16  situated' standard"); *see also Murillo v. PG&E*, 266 F.R.D. 468 (E.D. Cal. 2010).

17       Although the operative version of the Complaint asserts a collective action under the

18  FLSA, it also brings state law claims which Plaintiff now seeks to certify as a Rule 23 class action

19  via the Motion.[2] Despite the collective action allegations in the Complaint, however, the Motion

20  only makes reference to certification and settlement of the *class* action under Rule 23 and

21  contains no mention of the *collective* action (although the proposed release of claims in the Joint

22  Stipulation includes claims under the FLSA and the Motion attaches an opt in notice for the

23  FLSA claims). It is thus unclear whether Plaintiff is requesting certification of both the collective

24  and class actions. Because the Court recommends that the Motion be denied the Court will

25  proceed with the collective certification analysis so that Plaintiff may remedy this deficit if he

26  decides to seek certification and settlement approval for this class again.

27

28  [2] Indeed, the current version of the Complaint is titled the "Second Amended FLSA *Collective Action* California Class Action." (ECF No. 30-1) (emphasis added).

4

1

   **A.      FLSA Collective Certification**

2

           *i.  The process of collective certification*

3       The FLSA requires employers to pay an overtime rate of one and one-half times the

4  regular rate of pay for hours worked over forty hours in a workweek. 29 U.S.C. § 207(a)(1).

5  Under the FLSA, an employee can bring a collective action on behalf of himself and any "other

6  employees similarly situated." 29 U.S.C. § 216(b). Collective actions under the FLSA are

7  distinguishable from Rule 23 class actions, particularly with respect to the ability of class

8  members to opt in or out of the action. *See, e.g., Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976

9  (7th Cir. 2011) ("the FLSA permits an employee to participate in a collective action only if that

10  employee consents in writing to be a plaintiff in the action"). If an employee does not opt-in to

11  the FLSA suit, she may instead bring a subsequent individual action. *EEOC v. Pan Amer. World*

12  *Airways, Inc.*, 897 F.2d 1499, 1508 n. 11 (9th Cir. 1990).

13       The determination whether a collective action under the FLSA is appropriate is within the

14  court's discretion; a plaintiff bears the burden of showing that she and the proposed class

15  members are "similarly situated." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535 (N.D.

16  Cal. 2007). The Ninth Circuit has not yet defined "similarly situated" under the FLSA and courts

17  have adopted several different approaches to analyze certification of a collective action under the

18  FLSA. *Id.* at 536. However, district courts in this Circuit have generally applied a two-step

19  inquiry to the analysis.[3] *Id.*

20       In the first step, the court conditionally determines whether the potential class members

21  are similarly situated to the representative plaintiff and decides whether a collective action should

22  be certified for the purpose of sending notice of the action to the potential class members.

23  *Leuthold v. Destination America*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("Under the two-tiered

24  approach, the court must first decide, based primarily on the pleadings and any affidavits

25  submitted by the parties, whether the potential class should be given notice of the action").

26  _____

27  [3] At least five other circuits have adopted a similar approach. *See, e.g., White v. Baptist Memorial Health Care Corp.*,
   699 F.3d 869, 877 (6th Cir. 2012); *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010); *Sandoz v. Cingular*

28  *Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260
   (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

1   Although the plaintiff bears the burden of showing that he is similarly situated to the putative

2   class members, the burden is not a heavy one: "[T]he court requires little more than substantial

3   allegations, supported by declarations or discovery, that 'the putative class members were

4   together the victims of a single decision, policy, or plan.'" *Stanfield v. First NLC Fin. Servs.,*

5   *LLC*, No. C 06-2892 SBA, 2006 WL 3190527, at *3 (N.D. Cal. Nov. 1, 2006), *quoting Gerlach v.*

6   *Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *2 (N.D. Cal. March 28, 2006).

7        At the second step of the two-step inquiry, "the party opposing the certification may move

8   to decertify the class once discovery is complete." *Escobar v. Whiteside Constr. Corp.*, No. C 08-

9   01120 WHA, 2008 WL 3915715, at *3 (N.D. Cal. Aug 21. 2008) ("Certification is called

10  'conditional' during the first stage because the opposing party could always (successfully) move

11  for decertification."). "[T]he Court then determines the propriety and scope of the collective

12  action using a stricter standard." *Stanfield*, 2006 WL 3190527, *2. At that point, "the court may

13  decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at

14  467.

15       It is at the second stage that the Court makes a final factual determination about whether

16  the plaintiffs are actually similarly situated by weighing such factors as: "(1) the disparate factual

17  and employment settings of the individual plaintiffs; (2) the various defenses available to the

18  defendants with respect to the individual plaintiffs; and (3) fairness and procedural

19  considerations." *Id*. Even at this second stage, the standard courts apply is different, and easier to

20  satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure

21  23(b)(3). *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009).

22                      *ii.   Collective certification of Plaintiff's FLSA claim*

23       In considering whether the lenient notice-stage standard has been met in a given case,

24  courts bear in mind that plaintiffs need not submit a large number of declarations or affidavits to

25  make the requisite factual showing that similarly situated class members exist. A handful of

26  declarations may suffice. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320,

27  at *2 (N.D. Cal. Feb. 18, 2009) (finding standard met based on declarations from plaintiff and

28  four other individuals); *Escobar*, 2008 WL 3915715, at *3-4 (finding standard met based on

declarations from three plaintiffs); *Leuthold*, 224 F.R.D. at 468-69 (finding standard met based on affidavits from three proposed lead plaintiffs).

Even under this lenient standard, however, Plaintiff in this instance fails to demonstrate that he is similarly situated to the putative class members. The Motion includes only cursory references to the underlying facts of the litigation. Significantly, Plaintiff here fails to submit a declaration on his own behalf to support the Motion—he relies instead on the Cohen Declaration to establish the fundamental facts of the case.

But the Cohen Declaration only includes basic facts about Technician job duties. It does not discuss how Technicians are compensated, whether they report their time in the same way that Plaintiff did, or even whether they are all classified as non-exempt employees. It does not identify a specific practice, policy, or decision made by the Defendant that impacts Plaintiff, as well as the other putative class members. Rather, the Declaration only contains specific facts about Plaintiff's compensation, followed by the conclusory allegation that "[i]t is Plaintiff's position that Defendant failed to properly compensate each and every Technician wages and/or overtime when provided [sic] service to more than one client per day." (Cohen Decl. at ¶ 21, ECF No. 31-2.) This is inadequate to demonstrate that "the putative class members were together the victims of a single decision, policy, or plan." *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *2 (N.D. Cal. March 28, 2006).

## B.    Compatibility of the FLSA Collective Action and Rule 23 Class Action

Before proceeding to the certification analysis for the California Claims required under Rule 23 of the Federal Rules of Civil Procedure, the Court must address the ability of the parties to proceed with both a collective and class action simultaneously.

Some courts have refused to allow such "hybrid" collective/class action claims to proceed simultaneously. *See, e.g., Leuthold*, 224 F.R.D. at 470 (denying motion to certify Rule 23 class claims in favor of collective certification of FLSA claim). Most importantly, the *Leuthold* court identified jurisdictional that issues could arise if many class members chose not to opt in to the FLSA collective action but chose not to opt out of the California class action—in other words, if many class members chose to pursue their state law claims but not their federal law claims. In

1    that case, the California claims could predominate and federal question jurisdiction could be

2    endangered. *Leuthold*, 224 F.R.D. at 470. The *Leuthold* court also raised the possibility that class

3    members could be confused by the different opt-in/opt-out procedures presented by FLSA and

4    Rule 23 actions. *Id.* It is unclear why the parties have neglected this issue (or, indeed, the entire

5    issue of collective certification) in their briefing. Should Plaintiff decide to resubmit a motion

6    requesting approval of the settlement, he should address this issue and explain why the Court

7    should allow the FLSA Claim to proceed along with the California Claims.

8              **C.      Rule 23 Class Certification**

9              Unlike the FLSA Claim, the California Claims must be certified under Rule 23 of the

10    Federal Rules of Civil Procedure. To certify a class, a plaintiff "must satisfy the requirements of

11    Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under

12    Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Even where

13    the certification of the class is unopposed, the Court must examine whether the settlement class

14    satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure of numerosity,

15    commonality, typicality, and adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d

16    1011, 1019 (9th Cir. 1998), *citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

17    ("we must pay 'undiluted, even heightened attention' to class certification requirements in a

18    settlement context"). The dominant concern of Rule 23(a) and (b) is "whether a proposed class

19    has sufficient unity so that absent members can fairly be bound by decisions of class

20    representatives." *Amchem*, 521 U.S. at 621.

21             Rule 23 does not establish "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*,

22    131 S.Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification must affirmatively

23    demonstrate his compliance with the rule—that is, he must be prepared to prove that there are *in*

24    *fact* sufficient numerous parties, common questions of law or fact, etc." *Id.* Thus, a court may be

25    required to "probe behind the pleadings before coming to rest on the certification question." *Id.*

26             Next, the Court must consider Federal Rule of Civil Procedure 23(e)(2), which requires

27    that any settlement in a class action be fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327

28    F.3d 938, 952 (9th Cir. 2003). The role of a district court in evaluating the fairness of the

settlement is not to assess the individual components of the settlement, but rather to assess the settlement as a whole. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) *reh'g denied* 709 F.3d 791 (9th Cir. 2013) ("the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court").

### i.   Rule 23(a)

#### 1.   Numerosity

The numerosity requirement of Rule 23 is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no "magic number" that qualifies a class for the numerosity requirement. *McCluskey v. Trs. of Red Dot Corp.*, 268 F.R.D. 670, 673 (W.D. Wash. 2010). However, multiple courts have held that classes of over forty individuals should be presumptively certified. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 n. 5 (3d Cir. 2013) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) ("numerosity is presumed at a level of 40 members"). Here, the putative class appears to be approximately 44 individuals. (Cohen Decl. ¶ 20, ECF No. 31-2.) And as Plaintiff points out, the relatively small value of each individual claim makes it unlikely that the individual claimants would pursue relief absent class certification, diminishing the prospect that joinder is a feasible alternative. (*Id*. ¶ 16.) Numerosity is satisfied.

#### 2.   Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, plaintiffs must do more than simply demonstrate that "they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Rather, they must pose a common question which is "apt to drive the resolution of the litigation." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims"). Commonality is not required for all claims. It is sufficient if there is one single issue

1   common to the proposed class. *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1064
2   (C.D. Cal. 2010).

3          Plaintiff provides a list of the causes of action in the Complaint and phrases each of them
4   in the form of a question (*e.g.,* "whether Defendant violated the Labor Code Private Attorneys
5   General Act, Labor Code §§ 2698, et seq.") in support of this requirement. (Motion 7:13-14, ECF
6   No. 31.) This is inadequate to demonstrate commonality. *Dukes*, 131 S.Ct. at 2551. Rather,
7   commonality requires a showing that the class members' respective claims "depend upon a
8   common contention . . . of such a nature that it is capable of classwide resolution." *Id.* Put another
9   way, a Plaintiff could demonstrate commonality by putting forth "significant proof" that there
10  was a "general policy" or some other mechanism used by Defendant that caused the asserted
11  common injury. *Id*. at 2553. In a case alleging unpaid overtime, for example, a plaintiff might
12  raise a question whether "the class had worked unpaid overtime as a result of 'Defendant's
13  unofficial policy of discouraging reporting of such overtime,'" or that a defendant "'knew or
14  should have known' that the class was working unpaid overtime." *Jimenez*, 765 F.3d at 1165-66.
15  None of the facts set forth in the Cohen Declaration establish this—it is likewise not clear which
16  of Defendant's specific practices or policies are objectionable to Plaintiff.[4] Consequently, it is not
17  clear that this practice affected all the class members. The mere assertion in the Cohen
18  Declaration that "Defendant failed to properly compensate each and every Technician wages
19  and/or overtime" is not enough—there are any number of different mechanisms or practices that
20  could cause an employee not to receive wages or overtime. Commonality requires Plaintiff to
21  identify that mechanism and show that it was common amongst the class.

22                      ***3.  Typicality***

23          Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical
24  of the claims or defenses of the class[.]" Typicality "refers to the nature of the claim or defense of
25  the class representative, and not to the specific facts from which it arose or the relief sought."
26  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Typicality, in other words,

---

27  [4] Nor does the Complaint appear to identify such a practice. Although not the focus of this decision, the Court
28  observes that the Ninth Circuit has recently stated its disapproval of such pleadings. *Landers v. Quality Comm'ns., Inc.*, No. 12-15890, 2015 U.S. App. LEXIS 1290 (9th Cir. Jan. 26, 2015).

tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *quoting Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). Part of the controlling concern is whether "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* The "commonality and typicality requirements occasionally merge: 'Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014), *quoting Dukes*, 131 S.Ct. at 2551 n.5.

As explained above with respect to commonality, it is not at all clear from the briefing that Plaintiff's experience with Defendant is typical or that the putative class injuries are "based on conduct which is not unique to the named plaintiffs." Nor is it even evident what Defendant did that caused Plaintiff's (or the other class members') injuries. Plaintiff has not demonstrated typicality.

### 4. Adequacy

To fulfill the adequacy requirement, the named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether the named plaintiff will adequately represent the class, courts ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  Indices of adequacy include, "among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (citations omitted). Review of the adequacy of representation is "especially critical when the class settlement is tendered along with a motion for class certification." *Hanlon*, 150 F.3d at 1020.

Plaintiff contends that the adequacy requirement has been met because "Plaintiff's

11

1   Counsel is experienced in prosecuting and defending employment litigation." (Doc. No. 31 at 14.)

2   The "qualifications of counsel for the representatives" is, in fact, one of several factors that the

3   Court must consider to determine adequacy. *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th

4   Cir. 1992).

5          More importantly, however, "[a] class representative must be part of the class and possess

6   the same interest and injury as the class members." *Amchem*, 521 U.S. at 626 (internal citations

7   omitted). Based on the information submitted, it is not clear that the Plaintiff is an adequate

8   representative of the class, nor that the potential class members have suffered the same injury as

9   the Plaintiff or possess the same interests as the Plaintiff, as discussed above.

10                      ***ii.  Rule 23(b)(3)***

11          To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or

12   fact common to class members predominate over any questions affecting only individual

13   members, and that a class action is superior to other available methods for fairly and efficiently

14   adjudicating the controversy." Certification under Rule 23(b)(3) requires that: (1) "common

15   questions must 'predominate over any questions affecting only individual members'"; and (2)

16   "class resolution must be 'superior to other available methods for the fair and efficient

17   adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022.

18                        ***1.  Predominance***

19          Predominance tests "whether [the] proposed classes are sufficiently cohesive to warrant

20   adjudication by representation." *Id.*, *quoting Amchem*, 521 U.S. at 594. The focus of the analysis

21   is on the "relationship between the common and individual issues." *Id.* Where "common

22   questions present a significant aspect of the case" and can be resolved for all class members in a

23   single action, the case can be handled "on a representative rather than individual basis." *Id*. The

24   predominance analysis is thus similar to the question of commonality. *Amchem*, 521 U.S. at 623-

25   624.

26          As discussed above, it is not clear that the class members have all been subjected to the

27   same alleged harm. Plaintiff asserts that this requirement is satisfied because "Plaintiff and the

28   Class Members seek compensation for unpaid wages and/or overtime, missed meal periods, and

1    missed rest periods." (Motion 9:23-25, ECF No. 31.) But as explained before, the mere assertion

2    that individuals have suffered similar injuries is inadequate. Plaintiff must also establish that there

3    is a common question that links these injuries together—whether a common policy or practice

4    caused the injuries, for instance. Plaintiff has not done this, thus the predominance inquiry is not

5    satisfied.

6                              *2.   Superiority*

7             Rule 23(b)(3) requires that courts consider "(A) the class members' interests in

8    individually controlling the prosecution or defense of separate actions; (B) the extent and nature

9    of any litigation concerning the controversy already begun by or against class members; (C) the

10   desirability or undesirability of concentrating the litigation of the claims in the particular forum;

11   and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-

12   certification settlement, however, there is no need to consider the "likely difficulties in managing

13   a class action." *Amchem*, 521 U.S. at 620. Rather, the focus shifts to those requirements that are

14   "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id.*

15            The parties are unaware of any concurrent litigation regarding the issues raised in this

16   action. Consequently, there do not appear to be any potential plaintiffs competing for control of

17   this or any other action. *Murillo v. PG&E*, 266 F.R.D. 468, 477 (E.D. Cal. 2010) ("In the absence

18   of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the

19   prosecution of this action or other actions, although objectors at the fairness hearing may reveal

20   otherwise"). In any event, any potential issues with competing claims can be adequately

21   addressed at the final fairness hearing.

22            Assuming, for the sake of argument, that Plaintiff was able to articulate a common

23   practice or policy that Defendant engaged in that is objectionable, he would likely be able to

24   establish that the concentration of the relevant claims is desirable here. As Plaintiff points out,

25   each of the individual class members' claims are likely to be for only a "relatively small amount

26   of damages." (Motion 10:8-12, ECF No. 31.) Thus, the costs of any litigation on an individual

27   basis would far outstrip the potential recovery. Allowing this action to proceed as a class action

28   thus appears to be the superior method of adjudicating the controversy. The superiority

1    requirement is met.

2        Despite this, however, the Court recommends that the request to conditionally certify the

3    settlement class be denied, for the reasons articulated herein.

4        **D.    Fairness, Adequacy, and Reasonableness of Proposed Settlement**

5        The Court now turns to discuss Federal Rule of Civil Procedure 23(e)(2), which demands

6    that any prospective settlement be "fair, reasonable, and adequate." *In re Mego Fin. Corp. Sec.*

7    *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (the "decision to approve or reject a settlement is

8    committed to the sound discretion of the trial judge because he is exposed to the litigants, and

9    their strategies, positions, and proof"). The review involves two steps: preliminary approval and

10   final approval.[5]

11       In the first step, the preliminary approval step, a court need only determine whether a

12   "proposed settlement is 'within the range of possible approval' and whether or not notice should

13   be sent to class members." *True v. Amer. Honda Motor Co.*, 749 F.Supp.2d 1052, 1063 (C.D. Cal.

14   2010), *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981). In

15   the second step, the final approval stage, the court "takes a closer look at the settlement,"

16   considers objections to the settlement, and examines "any other further developments" to make

17   the final fairness determination. *Id.* The fairness examination is designed to protect against fraud

18   or collusion between the respective parties; it is not intended to second guess the judgment of the

19   parties or tinker with particular terms of the settlement. *Hanlon*, 150 F.3d at 1027 ("the court's

20   intrusion upon what is otherwise a private consensual agreement negotiated between the parties to

21   a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement

22   is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and

23   that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned").

24       The factors the Court must weigh examining the fairness of the settlement agreement

25   include, among others: "the strength of the plaintiffs' case; the risk, expense, complexity, and

26

---

27   [5] The Court need not move on to this stage of the analysis because it has recommended that certification for the purposes of settlement be denied. However, it will conduct a brief analysis of the settlement agreement to help inform the parties of any lingering issues in the settlement agreement should they wish to renew their request and seek certification of the class and approval of the settlement at a later date.

28

1  likely duration of further litigation; the risk of maintaining class action status throughout the trial;

2  the amount offered in settlement; the extent of discovery completed and the stage of the

3  proceedings; the experience and views of counsel; the presence of a governmental participant;

4  and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026,

5  *quoting Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

6      Approval of a settlement must also be held to a "higher standard of fairness" when the

7  settlement occurs "before formal class certification." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819

8  (9th Cir. 2012) *reh'g denied* 709 F.3d 791 (9th Cir. 2013) ("The reason for more exacting review

9  of class settlements reached before formal class certification is to ensure that class representatives

10  and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed

11  plaintiffs who class counsel had a duty to represent'").

12                                   ***i.  Terms of the Settlement Agreement***

13      The settlement class will consist of all Technicians who were employed by Defendant

14  between November 6, 2008 and February 21, 2014.

15      Under the terms of the settlement agreement, Defendants will create a settlement fund of

16  $150,000 (the "Gross Settlement Fund"). Of that amount, up to $1,000 will be deducted as costs,

17  $5,500 will be deducted to cover claims administration costs and fees, $3,500 will be paid to the

18  named class representative, $4,000 will be paid to the Labor Workforce Development Agency per

19  California Labor Code § 2699, and up to $50,000 is to be paid to counsel as attorneys' fees.[6] This

20  leaves up to $87,000 to be paid out to class members who submit valid claims (the "Net

21  Settlement Fund").

22      The settlement is structured such that at least $60,900 is guaranteed to be paid out to

23  claimants. If payments made to claimants add up to less than $60,900, the payments will be

24  increased on a pro rata basis (based on the workweeks of each claimant) until they add up, in

25  total, to $60,900. Any amount over $60,900 that remains unclaimed will be retained by

26  Defendant. Thus, Defendant could retain up to $26,100 of the Net Settlement Fund, assuming

27  ————————————————

28  [6] The parties have agreed to use CPT Group, Inc. as their designated Claims Administrator. (Joint Stipulation 3:19-21, ECF No. 31-1.)

1  relatively few class members submit valid claims.

2      Each class member who submits a timely, valid claim will receive a proportion of the Net

3  Settlement Fund based on the number of workweeks the class member contributed to the total

4  "pool" of workweeks included in the settlement.[7]

5      Class members will be notified of the settlement via U.S. mail at their last known mailing

6  addresses, as provided by Defendant. The Claims Administrator will also run a search of the

7  National Change of Address database to determine if any class members have updated their

8  addresses. The Claims Administrator will mail these notices within fifteen (15) days after

9  receiving the Class Data Report from Defendant. Class members must then return their "Notice

10  Packets" within forty-five (45) days to be eligible for any settlement payment.[8]

11      The Notice Packet will include a Settlement Claim Form/Consent to Join notice (the

12  "Claim Form"), as well as a separate Notice of Pendency of Settlement (the "Notice"). The Claim

13  Form includes a short description of the class and provides simple instructions on how to opt-in to

14  the class with respect to the FLSA claims. It also includes an acknowledgment that the class

15  member is releasing any claims described in the Notice. The Notice includes a short description

16  of the claims in the case and the release of claims. It also describes the total amount of the Net

17  Settlement Fund and explains the calculation method for the individual settlement payments.

18  Finally, it includes a section that describes how to: (1) make a claim for a settlement payment; (2)

19  opt out of the settlement; or (3) object to the settlement. If the class member elects to make a

20  claim for a settlement payment, they are directed to fill out and sign the Claim Form.

21      The release of claims that the class members will be signing includes:

22      . . . all claims or causes of action that are pled or could have been pled in the
        Action and are reasonably related to the Alleged Claims. This includes both
23      known and unknown claims, based on the facts and circumstances alleged in the
        Complaint and that would reasonably relate thereto, that accrue during the Class
24      Period, including (1) any and all claims, debts, liabilities, demands, obligations,
        guarantees, costs, expenses, attorney's fees, damages, actions or causes of actions
25

26  [7] The total pool of workweeks included in the settlement will be calculated using data from a "Class Data Report"
    which is to be provided by Defendant within fifteen (15) days after preliminary approval of the settlement is granted.
27  The Class Data Report will also provide the names and last known mailing addresses for each class member and will
    not be disclosed to anyone but the Class Administrator.
    [8] The deadline for returning the Notice Packet is extended if the initial mailing is unsuccessful and the Claims
28  Administrator is required to take more extensive measures to determine a new address.

which arise from or relate to the alleged failure of Defendant to provide Class Members wages and/or overtime, meal periods, rest periods, accurate itemized wage statements and to maintain records as required by California law, the failure to pay any penalties under the California Labor Code including without limitation §§ 201, 202, 203, 226(a), 226.7, 510, 512, 558, 1174, 1174.5, 1194, and 1194.5, and any other claims whatsoever alleged in this case, including without limitation all claims for restitution and other equitable relief, all claims for wages, meal and rest period premiums, damages, penalties, punitive damages, interest, attorneys' fees, litigation expenses, arising from employment in a Covered Position, and (2) any other claims for alleged violations of or that arise under or are predicated upon the Fair Labor Standards Act, the California Unfair Competition Act and, in particular, California Business & Professions Code § 17200 *et seq.*, and California's Private Attorneys General Act ("PAGA"), codified at California Labor Code §§ 2698 through 2699.5, including without limitation all claims for wages, damages, liquidated damages, penalties, punitive damages, interest, attorneys' fees, litigation expenses, restitution, or equitable relief arising from employment in a Covered Position. In addition, the Settlement Class and each member of the Settlement Class who has not timely submitted a valid Request for Exclusion forever agrees that it, he or she shall not be entitled to receive nor accept back pay, compensation, damages, liquidated damages, punitive damages, penalties of any nature including without limitation penalties under Labor Code §§ 201, 202, 203, 226(a), 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1194.5, and 2698 *et seq.* or any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever relating to the Released Claims and against Defendant that accrue for any period from November 6, 2008 through and including February 21, 2014.[9]

### ii. Preliminary Determination of Adequacy

At the preliminary approval stage, "a court must focus on substantive fairness and adequacy, and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 415 (N.D. Cal. 2013), *quoting In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). In particular, the Court is concerned "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 at *11 (E.D. Cal. June 13, 2006), *quoting Tenuto v. Transworld Sys., Inc.*, No. CIV 99-4228, 2001 WL 1347235 at *1 (E.D. Pa. Oct. 31, 2001). If "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or

---

[9] In addition to this release of claims, the named class representative will also be agreeing to a release that includes all claims "arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties." (Joint Stipulation 16:11-18:5, ECF No. 31-1.)

1    segments of the class, and falls within the range of possible approval, then the court should direct

2    that the notice be given to the class members of a formal fairness hearing." *In re Tableware*

3    *Antitrust Litig.*, 484 F.Supp.2d at 1079.

4          The parties appear to have engaged in discussions, negotiations, correspondence, factual

5    and legal investigation and research and a careful evaluation of the strengths and weaknesses of

6    the case. (Cohen Decl. ¶ 12, ECF No. 31-2.) The case was litigated for nearly eighteen months

7    before the Motion was filed and this agreement appears to be the result of arms-length bargaining.

8    Plaintiff's counsel asserts that they have reviewed "employee time and pay records, employee

9    handbooks, and policies and procedures." *Id.* at ¶ 13. While it does not appear that the parties

10   have engaged in anything other than basic written discovery and document exchanges, it is

11   conceivable that the discovery exchanged provided the parties at least a partial window into the

12   likely hurdles they would face in continuing the litigation and determine that settlement is

13   appropriate.

14         The settlement agreement provides a settlement fund of $150,000. Each class member that

15   submits a valid and timely claim form will receive a settlement payment based on the number of

16   workweeks worked in the applicable time frame. The actual amount received will be determined

17   by the number of valid claimants and the number of workweeks worked, but the amount that each

18   class member receives appears to be fair. If, for example, the settlement amount were to be

19   divided equally amongst all 44 potential class members, each class member would receive well

20   over $1,750. This amount arguably falls within the reasonable range, particularly given the

21   difficulties Plaintiff could face in certifying the class or surviving summary judgment should

22   litigation continue. However, the lack of percipient facts presented in the Motion makes the value

23   of the claims difficult to assess. Thus, the parties are advised that, should they decide to seek

24   approval of the settlement again, they should include information detailing the value of the claims

25   in relation to the consideration paid for the release of those claims. The likely reaction of the class

26   members in response to this settlement is unknown at this point, but the Court will be better able

27   to gauge their respective reactions (and any potential objections) at the time of any final fairness

28   hearing.

Under the settlement agreement, the named class representative will only be receiving a service enhancement award of up to $3,500. This amount does not appear to be excessive in relation to the amount that other class members will likely be receiving. The Motion, however, does not contain any information on the time or effort Plaintiff devoted to the case. If Plaintiff decides to renew his Motion, he should provide the Court with information demonstrating the reasonability of the service enhancement award. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (named plaintiff awards should be evaluated "using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation'").

The Court is concerned however, with the amount of the Net Settlement Fund that could potentially revert to the Defendant should few class members submit valid claims (up to $26,100). At the same time, the Court understands that this amount is entirely contingent on the number of valid claims and that this issue may be moot by the final fairness hearing. Assuming Plaintiff decides to renew his Motion, the Court will reserve the discretion to determine the propriety of the reversion of any unpaid amount to the Defendant at any final fairness hearing thereafter.

### iii. Attorney Fees

When attorneys seek a proportion of the settlement fund as payment of attorneys' fees, courts in the Ninth Circuit have generally deemed 25% as a reasonable fee award. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure").

Class counsel is seeking up to $50,000 in attorney fees and costs, which is 33% of the Gross Settlement Fund. This action appears to have involved minimal discovery, was settled relatively early in the proceedings, and Plaintiff has provided no information for the Court to determine whether the fee is actually reasonable in relation to the number of hours that have been devoted to this action. On the other hand, the Court is cognizant that the amount sought is only

19

1    "up to" $50,000. Fifty thousand dollars is thus only a ceiling on the amount that Plaintiff's

2    counsel may actually receive.

3         Should Plaintiff decide to renew his Motion, he is advised that the Court will ultimately

4    cross check the requested percentage sought to ensure a fair and reasonable result at the final

5    approval hearing. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942 ("where

6    awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours

7    spent on the case, courts should adjust the benchmark percentage or employ the lodestar method

8    instead"). Plaintiff is advised that in submitting the final approval of class action settlement he

9    will be required to provide a thorough fee award petition that details: (1) a detailed description of

10   each task completed in the case; (2) the number of hours spent on each task; (3) when the work

11   was completed; (4) who performed the work; (5) each person's hourly rate; and (6) the total

12   number of hours worked.

13                    *iv.  Notice*

14        Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best

15   notice that is practicable under the circumstances, including individual notice to all members who

16   can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In particular, the notice

17   must "state in plain, easily understood language":

18        (i)     The nature of the action;
         (ii)    The definition of the class certified;
19       (iii)   The class claims, issues, or defenses;
         (iv)    That a class member may enter an appearance through an attorney if the
20               member so desires;
         (v)     That the court will exclude from the class any member who requests
21               exclusion;
         (vi)    The time and manner for requesting exclusion; and
22       (vii)   The binding effect of a class judgment on members under Rule 23(c)(3).

23   The Court has reviewed the proposed Notice and finds that it substantially conforms to the

24   requirements in Rule 23. It adequately describes the factual context of the case, the class

25   definition, and the potential issues at stake. It also provides detailed information on class

26   members' options and specific information regarding the date and location of the final approval

27   hearing. *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is

28   satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

1  with adverse viewpoints to investigate and to come forward and be heard'"), *quoting Mendoza v.*

2  *Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).

3       The delivery procedures of the notice pass muster, as well. Within 15 days after

4  Defendant provides a Class Data Report with contact and workweek information on each class

5  member, the Claims Administrator will mail out the Notice Packets via first class mail. The

6  Claims Administrator will use each class member's last known address and will run a search

7  through the National Change of Address database to determine whether any updates need to be

8  made to the mailing list. The Claims Administrator will also use forwarding services, skip-

9  tracing, or other means of determining current addresses if any of the notices are returned as

10  undeliverable. Of the 44 class members, 19 are current employees and 25 are former employees.

11  Given the small class size and recent time frame of the respective claims, the notice and mode of

12  delivery is appropriate.

13       The Court's only concern with respect to notice is the limited time frame class members

14  have to submit their Claim Forms. Class members have 45 days from the date of mailing to return

15  their Claim Forms and be included in the settlement. They will receive a short extension to this

16  deadline if the initial notice is returned as undeliverable. Such short periods are generally

17  disfavored—in general, sixty to ninety day periods are preferable. *See, e.g.*, *Lusby v. Gamestop*

18  *Inc.*, 297 F.R.D. 400, 414 (N.D. Cal. 2013) ("The short period proposed by the parties is likely to

19  decrease the number of opt-ins, opt-outs, and objections submitted. This undoubtedly benefits

20  Defendants—particularly where, as here, the settlement provides that unclaimed settlement funds

21  above a minimum amount revert to Defendants"); *Sanchez v. Sephora USA, Inc.*, No. C 11-03396

22  SBA, 2012 WL 2945753 at *6 (N.D. Cal. July 18, 2012) (rejecting forty-five day opt-in period

23  after surveying cases and finding that sixty to ninety days is the norm). Plaintiff should alter the

24  notice period required in any renewed motion for approval of the settlement.

25  **IV.    CONCLUSION AND RECOMMENDATION**

26       The Court finds that Plaintiff has not demonstrated that conditional class certification

27  under Rule 23, collective certification under the FLSA, or preliminary approval of the class action

28  settlement is warranted. Based on the foregoing, the Court RECOMMENDS that Plaintiff's

1   Motion for Preliminary Approval of Class Settlement be DENIED.

2        These findings and recommendations are submitted to the Honorable Anthony W. Ishii,

3   pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of

4   service of this recommendation, any party may file written objections to these findings and

5   recommendations with the Court and serve a copy on all parties. Such a document should be

6   captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge

7   will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

8   636(b)(1)(C). The parties are advised that failure to file objections within the specified time may

9   waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

10  1991).

11

12  IT IS SO ORDERED.

13     Dated:   **February 9, 2015**            **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28