1
2
3
4
5
6
7
8
9

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

**NICHOLAS MILLAN**, on behalf of
himself and others similarly situated,

               Plaintiffs,

    v.

**CASCADE WATER SERVICES,
INC.;** and **DOES 1** to **10,** inclusive,

               Defendants.

_____/

1:12-cv-01821-AWI-GSA

**ORDER GRANTING RULE 23 CLASS
CERTIFICATION, GRANTING FLSA
COLLECTIVE ACTION
CONDITIONAL CERTIFICATION,
AND DENYING PRELIMINARY
APPROVAL OF RULE 23 CLASS AND
FLSA COLLECTIVE ACTION
SETTLEMENT**

(ECF No. 43)

### I. Introduction

Plaintiff Nicholas Millan ("Plaintiff"), on behalf of himself and others similarly situated, filed this class action complaint against Defendant Cascade Water Services, Inc. ("Defendant") alleging violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code, and California Business and Professions Code § 17200. Plaintiff has now filed his second motion for preliminary approval of class settlement. Plaintiff's prior motion for approval was withdrawn after the assigned Magistrate Judge recommended denial and offered instruction as to the contents of a subsequent motion. Plaintiff's second motion has remedied some of the defects identified by the Magistrate Judge. Additionally, this Court has some concerns of its own regarding the fairness of this settlement. This Court has thoroughly reviewed the record and, for the following reasons, will grant Plaintiff's motion for class certification of the Rule 23 class, grant Plaintiff's motion for conditional

1  certification of the FLSA collective action, and will deny preliminary approval of the class

2  settlement.

**II. Background[1]**

*A. Factual Background*

5      Defendant is a water treatment company with facilities in California. Motion for

6  Preliminary Approval, ECF No. 43 ("ECF No. 43") at 2. Defendant employs Facilites

7  Maintenance Technicians ("Technicians") who provide maintenance at client sites. *Id.*

8  Technician duties include cleaning, plumbing, electrical, landscaping and general maintenance.

9  Declaration of Nicholas Millan ("Millan Dec.") at ¶ 3.  Plaintiff is one such Technician. *Id.* at

10  ¶ 2. He began working for Defendant on May 1, 2009. *Id.* Plaintiff and those in his position are

11  paid on an hourly basis as non-exempt employees entitled to overtime. *Id.*

12      Plaintiff performs the majority of his duties for one of Defendant's clients, Southern

13  California Edison. Millan Dec. at ¶ 4. However, Plaintiff would, on occasion, perform services for

14  other retail locations. *Id.* On a regular basis, Plaintiff was required to drive to and from work sites.

15  Defendant paid Plaintiff separately for hours worked and travel time. Travel time was always paid at

16  the regular rate, regardless of the total number of hours worked in a day. *Id.* at ¶¶ 9-10. Accordingly,

17  Plaintiff was not paid overtime when the total time worked in a day (including hours worked and

18  travel time) exceeded eight hours. *Id.* at ¶ 9.

19      From the beginning of Plaintiff's employment, he received work orders by fax. *Id.* at ¶ 5. He

20  was required to prioritize work orders by email by proximity to the Technician's location unless an

21  emergency arose. *Id.* During that time, Plaintiff appears to have been able to schedule his own hours

22  and record the time he worked and travelled on time sheets.[2] In approximately 2011, Plaintiff began

23  receiving work orders by email and through a company provided cell phone. *Id.* at 5; ECF No. 43 at

24  8-9. After that time, Plaintiff contends that he "was unable to schedule [his] own work at [his] own

25  leisure." Millan Decl. at ¶ 6. Instead, he was required to follow the work orders provided by

26  defendant in a timely fashion. *Id.* Once field work on an order was completed, Plaintiff was further

27

---

28  [1] This section is not a complete background of this case. To supplement the background provided, refer to the
February 9, 2015 recommendation issued by the Magistrate Judge. ECF No. 36.
[2] ECF No. 36 at 2-3 (citing Declaration of Darren M. Cohen ("Prior Cohen Decl."), ECF No. 31-2 at ¶ 20).

required to submit the work order to the manager of the client's site for signature. *Id.* At the end of the work day, Plaintiff was required to finalize all work orders and fax them to Defendant's corporate office before 8:00 a.m. the next morning. *Id.*

In addition to completion of work orders, Plaintiff was required to complete a daily time sheet, standard to and required of all California Technicians. Millan Dec. at ¶ 7. The daily time sheets contained: a call number, job status, client name, site number, start time, end time, hours per job, hours per activity, total hours for the day, and start and end times of the lunch break. *Id*. Plaintiff submitted a daily time sheet every day, along with his work orders. *Id.*

In addition to the daily time sheet, Plaintiff and the other Technicians were required to complete a weekly time sheet. Millan Dec. at ¶ 8. That time sheet was submitted every Friday. *Id.*

Plaintiff further alleges that he was told that he could take a thirty minute lunch break. However, "often times, [he] was too busy with work … to take a full thirty minute uninterrupted meal break…." Millan Dec. at ¶ 13. Plaintiff alleges the same with regard to a second meal break when he worked over ten hours and with regard to rest breaks. *Id*. at ¶¶ 13-14. Plaintiff further alleges that "[o]ther … Technicians [he] spoke with had the identical experience regarding the lack of meal and rest breaks." *Id*. at ¶ 15.

Based on those facts, Plaintiff has alleged

> a federal claim under the FLSA for overtime and record keeping violations (the "FLSA Claim"), as well as California state law claims for: (1) violations of California's Unfair Competition Law (Business and Professions Code § 17200); (2) failure to pay overtime (Labor Code §§ 510, 1194, 1194.5); (3) failure to provide meal breaks (Labor Code § 226.7); (4) failure to provide rest breaks (Labor Code § 226.7); (5) violations of California record-keeping provisions (Labor Code §§ 226, 1174, 1174.5); (6) waiting time penalties (Labor Code §§ 201-203); and (7) penalties under the Private Attorney General Act ("PAGA") (Labor Code § 2698 *et seq.*) (collectively, the "California Claims").

ECF No. 36 at 2.

### B. Proposed Settlement

The parties seek conditional certification of the following class member definition:

> Any person who, at any point between November 6, 2008 and February 21, 2014, inclusive is or was employed by Cascade Water Services, Inc. in California as a Technician and other similar position.

3

1    ECF No. 43-1 ("Settlement Agreement") at § I.L.

2           The parties have agreed to a total maximum settlement amount of $150,000.00 to be paid

3    by Defendant. Settlement Agreement at § I.WW. In exchange Plaintiff and the putative class will

4    release all claims from November 6, 2008 to February 21, 2014, alleged against Defendant. *Id*. at

5    § I.PP. That settlement amount is to be divided between: (1) satisfaction of claims by the

6    settlement class members, (2) payment of class counsel's fees and costs, (3) satisfaction of the

7    class representative's service award, (4) satisfaction of PAGA penalties to the LWDA, and (5)

8    payment of claims administration costs. *Id*. at §§ I.I, I.M, I.T, I.CC, and I.JJ. Specifically,

9    $87,000.00 will be allocated to the net settlement fund. *Id* at § I.BB. At least $60,900.00 (70% of

10   the net settlement fund) will be divided between class members who submit timely and valid

11   claims. *Id*. at §VI.I.5.g. The proposed payout to each class member is calculated as follows: The

12   number of weeks worked by the employee during the class period will be divided by the total

13   number of work weeks worked by all class members – regardless of whether or not each submits

14   a claim – within the class period. The resulting figure will be the payout ratio. The payout ratio

15   will then be multiplied by the net settlement fund amount ($87,000.00). The resulting figure will

16   be the individual employee's settlement share. (*Id*. at § VI.I.5.a-f.) However, if the employees

17   who submit claims represent less than 70% of the total number of weeks worked by all class

18   members, then 70% of the net settlement fund amount will be distributed, pro rata, to the

19   claimants. The remaining 30% would revert to Defendant. Similarly, if more than 70% of the net

20   settlement fund is claimed, any unclaimed portion will revert to defendant.

21          The release provisions of the settlement agreement provide that all Settlement Class

22   Members – all class members who have not "validly and timely opted out of the Settlement"

23   Settlement Agreement at §I.TT. – release "all claims or causes of action that re pled or could

24   have been pled in [this] [a]ction… including" California Labor Code claims, Unfair Competition

25   claims, and Business and Professions Code claims, PAGA claims, and "any [alleged unalleged]

26   claims for violations of or that arise under or are predicated upon the Fair Labor Standards

27   Act…." Settlement Agreement at § I.PP; *see* § V.A. ("All Class Members shall be bound by this

28

                                                      4

1  release unless they formally opt out of this Settlement by submitting a valid and timely Response
2  for Exclusion.")

3         The agreement further provides for a fee award to class counsel in an amount up to, but
4  not exceeding, $50,000.00, and an award of costs not exceeding $1,000.00 to be paid from the
5  total maximum settlement fund. Settlement Agreement at § VI.F.

6         The parties have agreed, subject to Court approval, that CPT Group, Inc., will be
7  appointed as claims Administrator and compensated no more than $5,500.00 from the
8  total maximum settlement amount for that service. Settlement Agreement at § VI.H.

9         Finally, the settlement agreement provides that class counsel will seek an award
10 not exceeding $3,500.00, less payroll deductions, as a class representative service
11 enhancement award. Settlement Agreement at § VI.E.

12                                  **III. Discussion**

13        As the Magistrate Judge's prior order (ECF No. 36) and Plaintiff's present motion for
14 certification and preliminary settlement approval (ECF No. 43 at 15, 18) correctly recognize,
15 certification of a FLSA collective action and a Rule 23 wage and hour class action must be
16 analyzed as separate analytical steps. Again, as the Magistrate Judge and Plaintiff have both
17 identified, allowing an "opt-in" FLSA class and an "opt-out" Rule 23 wage and hour class to
18 proceed in a single action presents potential problems that would not be present if either
19 proceeded separately. ECF No. 36 at 7-8; ECF No. 43 at 17-18. This Court will discuss: (A) the
20 potential problems in proceeding with both the collective action and the class action as
21 recommended by Plaintiff; (B) certification of the Rule 23 class action; (C) certification of the
22 FLSA collective action, (D) the appropriateness of the notice, release, and claim plan; and (E)
23 the fairness of the Settlement Agreement.

24 *A. Compatibility of a FLSA Collective Action with a Rule 23 Class Action*

25        The Magistrate Judge noted the potential incompatibility of a FLSA collective action
26 with a Rule 23 action in his prior recommendation to this Court. ECF No. 36 at 7-8 (citing
27 *Leuthold v. Destination America, Inc*., 224 F.R.D. 462, 470 (N.D. Cal. 2004)). The Magistrate
28 Judge highlighted the possible confusion to class members and possible jurisdictional concern

5

presented by a FLSA opt-in class and a Rule 23 opt-out class. *Id*. at 8.[3] In an apparent attempt to address the Court's concern, Plaintiff has muddled the distinction between the mandatory opt-out procedure of Rule 23(c)(1)(B)(v) (*see Thorpe v. Abbot Laboratories, Inc*., 534 F.Supp.2d 1120, 1123 (N.D. Cal. 2008)) and the mandatory opt-in procedure of 29 U.S.C. § 216(b) (*see id*.). ECF No. Doc 43 at 17-18. To remove all confusion: A FLSA claim "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); *see Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir. 2013) *rev'd on other grounds* 135 S. Ct. 513 (2014). Whereas a party seeking class certification pursuant to Rule 23(b)(3) must give notice to any putative class member "that the court will exclude from the class any member who requests exclusion." Fed.R.Civ.P. 23(c)(2)(B)(v). Rule 23 simply does not provide for an opt-in class. *Id.*; *Thorpe*, 534 F.Supp.2d at 1123. Indeed, the release of claims portion of the Settlement Agreement provides that "[a]ll Class Members shall be bound by this release unless they formally opt out of this Settlement by submitting a valid and timely Request for Exclusion." Settlement Agreement at § V.A.[4] Even assuming that Rule 23 allowed an opt-in class – which it does not – the settlement language is inconsistent with this settlement class being opt-in. The release and how it is explained to putative class members is of significance but it does not indicate an incompatibility between a FLSA collective settlement and a Rule 23 class settlement. Rather, it impacts adequacy of the class notice.

---

[3] In light of the Ninth Circuit's comment that "district courts should be able to 'work[] out an adequate notice in this type of case'" without requiring dismissal of the state law claims, this Court shares the Magistrate Judge's concern regarding minimizing confusion when giving notice to putative class members but does not share any  jurisdictional concern. *Busk v. Integrity Staffing Solutions*, 713 F.3d 525, 530 (9th Cir. 2013) *rev'd on other grounds* 135 S.Ct. 513 (2014). That is especially true considering the rationale for denying supplemental jurisdiction in "hybrid" actions is generally because the state claims substantially predominate over the FLSA claim. *See Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) (citations omitted). Because this case involves a proposed settlement, the justification for declining to exercise supplemental jurisdiction on "predominance" grounds is minimal.

[4] *See* Settlement Agreement at § VII.B.5.d. ("Although Class Members who do not exclude themselves and do not submit a valid and timely Claim Form shall not receive a Settlement Payment, such persons shall nonetheless be Settlement Class Members and will be bound by all terms of the Settlement… including the release….")

Second, the settlement does not appear to take into account what would take place if a Class Member did not opt in to the FLSA action and submitted a claim or opted in to the FLSA action and opted out of the state action, i.e., recovery from the general fund appears to assume that each of the Class Members will either submit no claims or seek all recovery available under this action. In fact, the proposed notice packet fails to accurately notify putative class members of their options. The options articulated in the notice packet are as follows: (1) "[m]ake a [c]laim"  (for both the FLSA action and the Rule 23 action); (2) "[r]equest [e]xclusion ('[o]pt [o]ut')"; (3) "[o]bject to the [s]ettlement; or (4) "[d]o nothing."  This Court's concern is that settlement agreement does not permit putative class members to elect to (a) opt in to the FLSA class but opt out of the Rule 23 class or (b) submit a Rule 23 claim and not opt in to the FLSA class. That deficit should be remedied prior to any motion for certification. *See Tijero v. Aaron Brothers, Inc.*, 301 F.R.D. 314, 326 (N.D. Cal. Dec. 19, 2013) (permitting a class member in a hybrid action to submit a Rule 23 claim and specifically indicate that he or she does not opt in to the FLSA action).

In the past, courts have approved of FLSA / Rule 23 hybrid settlements where the parties agreed to the creation of separate settlement funds for the FLSA class and the Rule 23 class. *See, e.g., Khanna v. Intercon Sec. Systems, Inc.*, 2014 WL 1379861, at *5 (E.D. Cal. Apr. 8, 2014); *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918, at *6 (N.D. Cal. May 3, 2013) (noting that the parties had agreed to separate funds for recovery under the FLSA class and the California class.) Such a construction would better protect absent class members.

In summary, a Rule 23 class action and a FLSA collective action can be prosecuted in the same action. However, as discussed in more depth *infra*, having a single settlement fund from which both the FLSA and Rule 23 claims are satisfied is problematic.

### B. Rule 23 Class Action Certification

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the

fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Federal

courts must pay "undiluted, even heightened, attention" to class certification requirements in a

settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v.*

*Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly

leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the

fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*,

2005 WL 1030248, at *7 (C.D.Cal. May 2, 2005).

Before the court may evaluate a class action settlement under Rule 23(e) of the Federal

Rules of Civil Procedure, the settlement class must meet the requirements of Rules 23(a) and (b).

Rule 23(a) of the Federal Rule of Civil Procedure lists four criteria that must be met to certify a

class action: (1) numerosity; (2) commonality of law or fact; (3) typicality of the representative

plaintiff's claims; and (4) adequacy of representation. A class may only be certified if the court is

"satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The burden is on the party

seeking class certification to show that these elements have been met. *Doninger v. Pac. N.W.*

*Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

Once subsection (a) is satisfied, the putative class must then fulfill the requirements of

Rule 23(b)(3). If subsections (a) and (b) are satisfied, the Court will evaluate whether the

settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C).

*1. Rule 23(a)(1) - Numerosity*

The class must be so numerous that joinder of all members individually is

"impracticable." Fed.R.Civ.P. 23(a)(1). Rule 23's requirement that "the class be so numerous

that joinder of all members is impractical does not mean that joinder must be impossible, but

rather means only that the court must find that the difficulty or inconvenience of joining all

members of the class makes class litigation desirable." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112

(N.D. Cal. 1981); *accord Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 388 (C.D. Cal.

2009) (defining "impracticability" as when joinder of all class members is "difficult or

inconvenient*"); Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal.

2008) (holding that "an attempt to join all parties must only be difficult or inconvenient" to satisfy Rule 23(a)(1)) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964)).

No specific numerical threshold is required. *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). Instead, it "requires examination of the specific facts of each case and imposes no absolute limitations*." General Tel. Co.*, 446 U.S. at 330. That said, generally, forty or more members will satisfy the numerosity requirement. *Collins v. Cargill Mean Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995). Here, the class is composed of 44 eligible class members. ECF No. 43 at 21. Further, as Plaintiff notes, the relatively small value of each claim makes it unlikely that the individual claimants would pursue relief absent class certification. *Id*.

The putative class is sufficiently numerous to satisfy Rule 23(a)(1).

*2. Rule 23(a)(2) - Commonality*

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed.R.Civ.P. 23(a)(2). All questions of fact and law need not be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury….'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ____,____, 131 S. Ct. 2541, 2551, (2011) (citing *Falcon*, 457 U.S. at 157). "This does not mean merely that they have all suffered a violation of the same provision of law," rather, "[t]heir claims must depend upon a common contention" the determination of the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Rather than focus on the traditional inquiry of identifying common questions, the *Wal-Mart* Court focused on "the capacity of [the] classwide proceeding to generate common answers." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

The *Wal–Mart* plaintiffs alleged local managers discriminated against women when exercising discretion over pay and promotion decisions. *Wal-Mart*, 131 S. Ct. at 2548. This

discretion, according to plaintiffs, was exercised disproportionately in favor of male employees, leading to an unlawful disparate impact on the female employees. *Id.* The Court's focus in finding inadequate class commonality was on the fact that the alleged discrimination was not an overarching policy of discrimination attributable to Wal-Mart. Rather, the discrimination alleged was a result of the exercise of individual managerial discretion. *Id.* Accordingly, the Court found that the purported common questions were not able to produce the common answers necessary to satisfy the commonality inquiry. *Id.*

In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice. *See Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 513 (E.D. Cal. 2014). Many California Courts and United States District Courts have found that claims based on a policy that is applicable and applied to all putative class members can satisfy the commonality requirement of Rule 23(a). *See, e.g., Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1020, 1033 (2012) (finding, despite the fact that "Brinker submitted hundreds of declarations in … opposition to class certification," "[c]laims alleging that a uniform policy consistently applied to a group of employees in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."); *Vedachalam v. Tata Consultancy Servs., Ltd.,* 2012 WL 1110004, at *12–*13, (N.D. Cal. April 2, 2012) (rejecting defendants' argument that "this policy was not always uniformly applied," citing *Kurihara* v. Best Buy Co., 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007)); *In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012) (where defendants admitted that there was a uniform policy but argued that "as a matter of practice, the policy is carried out in a variety of ways," the court relied on *Brinker* and found that it was sufficient that there was "a corporate policy that was equally applicable to all employees").

The Magistrate Judge's prior order noted Plaintiff failed to establish commonality, in part, because defendant failed to prove, with supporting evidence, that Defendant had practices giving rise to the alleged violations and that such practices affected the putative class as a whole. *See Wal-Mart*, 131 S.Ct. at 2551 ("A party seeking certification must affirmatively demonstrate compliance with … Rule [23] – that is, he must be prepared to prove that there are *in fact* …

common questions of law or fact….") (emphasis original).[5] Plaintiff has attempted to resolve this failing by submitting a declaration by the named plaintiff, wherein he detailed facts supporting a claim that Defendant failed to pay overtime, and provide meal and rest periods. *See* Millan Decl. at ¶¶ 6-9, 13-15. At the end of each section regarding Defendant's alleged practices, Mr. Millan declared that the practice at issue "was identical for all … Technician[s] working in California." Millan Decl. at ¶¶ 6-8; *accord id.* at ¶ 12 ("Other … Technicians … had the same issues" with failure to pay overtime for travel.); *id.* at ¶ 15 ("Other … Technicians … had the identical experience regarding the lack of meal and rest breaks.) Further, Mr. Millan has indicated that he inquired with the company regarding payment of overtime for time hours worked in excess of eight hours in one day (including travel time) and he was advised, on multiple occasions, that "Defendant does not pay overtime for travel time." Millan Decl. at ¶ 10. Plaintiff has submitted unrebutted evidence tending to indicate that Defendant had a blanket policy of not paying overtime for travel time in excess of eight hours in one day. Accordingly, the entire class seems to have been *subject* to the same allegedly unlawful wage and hour practice.

However, other than Plaintiff's conclusory statements that the other Technicians that he spoke to had faced the same issues, there is no evidence regarding the injury, if any, to the other putative class members – i.e., there is no indication that other putative class members ever worked overtime (or ever missed meal or rest breaks). Plaintiff appears to have done little to no investigation into the potential claims by other putative class members.[6] Bearing in mind that the Court's role in certifying a class for settlement is largely to protect the absent class members, (*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)), the Court is not particularly concerned that the absent class members may receive compensation for injuries that some never suffered. That remedy would not tend to injure the absent class members, only Defendant. Defendant

---

[5] The Magistrate Judge even provided an example of an appropriate common question in a case alleging unpaid overtime: "whether 'the class had worked unpaid overtime as a result of 'Defendant's unofficial policy of discouraging reporting of such overtime.'" ECF No. 36 at 10. That question is composed of (1) a common factual scenario for putative class members – working overtime, and (2) a policy discouraging the reporting of such overtime.

[6] Despite counsel's assertion that "[t]he case was extensively litigated before the proposed settlement was agreed to," Plaintiff has not submitted any evidence that any discussion has been had with any other putative class member. Cohen Decl. at ¶ 3.

appears to have informed Plaintiff that the putative class members worked an average of two hours of unpaid overtime per week[7] and, based on its participation in the settlement, Defendant appears satisfied to recognize that its policy likely impacted all putative class members. Declaration of Darren M. Cohen, ECF No. 43-2 ("Cohen Decl."), at ¶ 29. Plaintiff has established sufficient commonality.

*3. Rule 23(a)(3) - Typicality*

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. *Falcon,* 457 U.S. at 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. For example, in *In Re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 547 (N.D. Cal. 2012), one of several proposed classes would have included employees who were reimbursed mileage for use of their personal vehicles for work-related duties at the rate of thirty cents per mile. Because the proposed representative plaintiff was never reimbursed at that rate, the typicality requirement was not satisfied and therefore that class could not be certified. *Id.* at 547-548.

As earlier noted, it is asserted that Defendants had a policy of refusing to pay an overtime rate for travel time to all employees. Putative class members were paid at their normal rate even when they worked more than 8 hours in a day or 40 hours in a week. Although potentially different in extent and frequency from the putative class members, Plaintiff appears to have suffered the same injury – under payment for overtime – as the putative class.[8] For purposes of preliminary certification and settlement, Plaintiff has made an adequate showing that at least one claim is typical to the class.

---

[7] The calculation of the two hour unpaid overtime estimate will be discussed as it relates to the fairness of the settlement.

[8] The Court is concerned about the lack of information regarding the injuries that putative class members may have suffered. If putative class members suffered broader injuries than the named plaintiff, the compensation awarded may not justify the scope of the release. In other words, putative class members may be releasing claims that they are not compensated for by the settlement award. However, for purposes of preliminary certification, the Court has seen no indication that the named plaintiff's injuries are atypical of the class.

1    *4. Rule 23(a)(4) - Adequacy*

2        The requirement of adequate representation asks whether the representative "will fairly

3    and adequately protect the interests of the class." *See* Fed.R.Civ.P. 23(a)(4). Courts are to inquire

4    (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the

5    potential class members and (2) whether the named plaintiff and counsel will prosecute the

6    action vigorously for the class as a whole. *See Hanlon,* 150 F.3d at 1020.

7        Plaintiff has no antagonistic interest to the rest of the class, (Cohen Decl. at ¶ 35) appears

8    to have actively participated in discovery, (*id.* at ¶¶ 29, 35) and continues to be in

9    communication with counsel (*id.* at ¶ 36). However, as the Magistrate Judge previously noted, in

10   order to meet the adequacy requirement, "'[a] class representative must be part of the class and

11   possess the same interest and injury as the class members.'" ECF No. 36 at 12 (quoting *Amchem*,

12   521 U.S. at 626). Without any indication of the injuries suffered by the putative class members,

13   this Court cannot determine whether Mr. Millan is an adequate representative.

14       There is no question that Plaintiff's counsel has extensive experience in litigating wage

15   and hour class actions. *See* Cohen Decl. at ¶¶ 42-44.

16       The adequacy requirement is met.

17   *5. Predominance*

18       "[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between

19   individual and common issues." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 663 (E.D. Cal. 2008).

20   Where common questions present a significant aspect of the case and are able to be resolved for

21   all class members in a single action, the case can be handled on a representative rather than

22   individual basis. *Alberto*, 252 F.R.D. at 663.

23       The primary injuries to the class members appear to be largely identical and are all

24   alleged to be the result of an overarching policy. Although the scope of the underpayment will

25   vary from plaintiff to plaintiff, the determination of whether the policies at issue actually violate

26   the California Labor Code will answer a bulk of the inquiry before the Court. Especially in light

27   of the fact that the parties have agreed to a settlement, the common issues appear to predominate

28   over the required individual inquiries.

*6. Superiority*

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. *Amchem*, 521 U.S. at 620; *Murillo v. Pac. Gas & Elec. Co.*, 226 F.R.D. 468, 473 (E.D. Cal. 2010).

The parties estimated total injury, assuming a 100% violation rate for each of the alleged Labor Code violations (and including the FLSA claims), penalties, and interest, is $325,000. The total number of putative class members is 44. Accordingly, by all accounts, the average maximum recovery available putative class member is about $7,386. It is unlikely that such a sum would drive interest in controlling the prosecution of a separate action. Further, this Court is unaware of any concurrent litigation begun by any of the other putative class members regarding Defendant's wage practices.[9] A class action appears to be the superior method of adjudicating Plaintiff's California claims.

*7. Conclusion*

Because Plaintiff has satisfied all of the Rule 23(a) criteria and the Rule 23(b)(3) predominance and superiority requirements, this class is preliminarily certified.

**C. FLSA Collective Action Certification**

Settling of a Rule 23 class action requires meeting the well-defined Rule 23 requirements; settling a FLSA collective action has a less discrete framework. What is clear, however, is that a Court has a "considerably less stringent" obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement. *See Hill v. R+L Carries, Inc.*, 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010). That lesser interest in mind, the Court turns to the standard for FLSA collective action certification.

---

[9] The Court will again consider this factor prior to final approval and after conducting a fairness hearing.

Generally, an employee may bring a FLSA collective action on behalf of himself/herself and other employees who are "similarly situated" and who have filed written consents to join the action. 29 U.S.C. § 216(b); *see Valladon v. City of Oakland*, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009). Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term "similarly situated." *See Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015); *Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 426–27 (N.D. Cal. 2010). In *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court indicated that a proper collective action will address in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged prohibited activity." As the Magistrate Judge correctly noted, the Ninth Circuit has not directly spoken to the appropriate structure of a FLSA collective action certification. (ECF No. 36 at 5.) However, district courts in this Circuit use a two-step process:

> The first step under the two-tiered approach considers whether the proposed class should be given notice of the action. This decision is based on the pleadings and affidavits submitted by the parties. The court makes this determination under a fairly lenient standard due to the limited amount of evidence before it. The usual result is conditional class certification. In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried. *Id.* If the court finds that the plaintiffs are not similarly situated at that step, the court may decertify the class and dismiss opt-in plaintiffs without prejudice.

*Syed v. M-I, L.L.C.*, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014) (quoting *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007)) (internal quotation marks omitted).

As to the first inquiry, the putative class members, as described above, appear to be similarly situated because the FLSA claims all rely on the contention that Defendant's policy – denying overtime for driving time – is the cause of the FLSA violation. Under the FLSA's lenient standard, the first step is met.

As this Court now considers a settlement agreement, it is clear that Defendant will not seek decertification of the class conditionally certified for purposes of settlement. Absent an argument that the parties are not similarly situated, this Court need not look to the second step at all.

1    Plaintiff's FLSA class is conditionally certified.

2    **D. Appropriateness of the Notice, Release, and Claim Plan**

3    *1. Notice Plan*

4    For any class certified under Rule 23(b)(3), "the court must direct to class members the

5    best notice that is practicable under the circumstances." Fed. R. Civ.P. 23(c)(2)(B). In an FLSA

6    action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the

7    pendency of the collective action, so that they can make informed decisions about whether or not

8    to participate.'" *Adams v. Inter–Con Security Systems,* 242 F.R.D. 530, 539 (N.D.Cal.2007)

9    (quoting *Hoffman–La Roche v. Sperling,* 493 U.S. 165, 170 (1989)).

10    Notice mailed to the last known address of each putative class member and use of a skip

11    trace for each return satisfies the procedural aspect of both of those requirements.

12    *2. Scope of the Release*

13    The release in the settlement agreement is very broad. As noted, the Settlement

14    Agreement provides that all class members who have not "validly and timely opted out of the

15    Settlement" Settlement Agreement at §I.TT. release "all claims or causes of action that re pled or

16    could have been pled in [this] [a]ction… including" California Labor Code claims, Unfair

17    Competition claims, and Business and Professions Code claims, PAGA claims, and "any

18    [alleged or unalleged] claims for violations of or that arise under or are predicated upon the Fair

19    Labor Standards Act…." Settlement Agreement at § I.PP; *see* § V.A. ("All Class Members shall

20    be bound by this release unless they formally opt out of this Settlement by submitting a valid and

21    timely Response for Exclusion.") That release is overbroad insofar as it purports to allow release

22    of FLSA claims based on a class member's failure to opt out. FLSA claims are only released if

23    the class member consents in writing to becoming a member of the settlement class.

24    The class notice does not reflect the same. Instead, it informs class members that each

25    member "who does not timely or properly request exclusion … is deemed to fully … release

26    [Defendant] … from the **Released State Law Claims**, which include any and all claims that are

27    pled or could have been pled in the Action and are reasonably related to the Action, except the

28    FLSA claim." ECF No. 43-1, Exh. B ("Class Notice") at § 3 (emphasis original). The notice

16

further informs class members that each member "who submits a Claim Form and thereby opts in to the Settlement is deemed to fully … release … [Defendant] from the **Released Federal Law Claims**, which include any and all federal claim or causes of action that are pled or could have been pled in the Action and are reasonably related to the Alleged Claims…." *Id*. (emphasis original). The information that the parties propose providing to the class members is correct; FLSA claims are only released as to class members who opt in to the FLSA settlement.

*3. Substantive Notice Considerations Specific to Hybrid Actions*

District Courts in FLSA hybrid action consistently require class notice forms to explain: "(1) the hybrid nature of th[e] action; (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting in to the FLSA collective action, opting out of the Rule 23 class action, or doing nothing." *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013); *see Murillo*, 266 F.R.D. 468, 472-472 (Notice is not preclusively confusing where the "the notices clearly explain the consequences of choosing to opt in to the FLSA action, opt out, or do nothing.")

In this action, the class notice – attached to the claim form – explains that state and federal claims are at issue in this action. *See* Class Notice at § 2. It explains that submission of the claim form exhausts both state and federal claims. *Id*. at § 3. It also explains the options the parties have made available to the class members, including: "Make A Claim for Your Settlement Payment," "Request Exclusion," "Object to the Settlement," or "Do Nothing" and the consequences of each action. *Id* at § 5. However, as identified in Section III(A), *supra,* the settlement does not provide class members the option to exhaust only the FLSA claim or only the Rule 23 claims. Instead, it gives the false – all or nothing – option to either (a) be subject to the Rule 23 class release without recovering or (b) submit a claim and recover for both the FLSA claim and the Rule 23 claims.

*4. Claim Requirements*

The Rule 23 settlement class in this action is an opt out class (meaning that the settlement will bind all of Defendant's employees who receive notice and fall within the class member definition unless the employee opts out) but payments are only made on a "claims made" basis (meaning that a payment is only made to a class member if a valid and timely claim for payment is made. Otherwise, the settlement's release provision applies but the class member does not recover.). The parties have structured the settlement agreement in a manner that avoids the potential class member confusion concern expressed by the Magistrate Judge (*see* ECF. No. 36 at 7-8) – that class members will be confused by the options to both opt in of one class and opt out of another – by relying on class member apathy and minimizing the likely settlement payments. *See Acosta v. Trans Union*, LLC, 243 F.R.D. 377, 391 (C.D. Cal. 2007); *Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D. Maine 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."); Max Helveston, *Promoting Justice Through Public Interest Advocacy in Class Actions*, 60 Buff. L.Rev. 749, 782–83 (2012). The settlement presented to this Court has a release clause that is as wide as legally permissible – requiring no action on the part of class members – however, class members only recover if they submit a timely claim. Despite the 70% mandatory net settlement fund payout, the settlement appears designed to minimize payout to the class members while generously compensating class counsel. As noted, Counsel seeks $50,000.00 in fees while putative class members would only be guaranteed a share of $60,900.00.

Although a limited claims turnout is by no means written in stone, the claims process appears to serve little purpose here (other than minimizing Defendant's payout). As noted by the Federal Judicial Center, a claims process is not necessary in all cases:

> "In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."

*De Leon v. Bank of Am., N.A.*, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012) (quoting 2010 version of the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center); *see Otey v. CrowdFlower, Inc.*, 2015

WL 4076620 (N.D. Cal. July 2, 2015) (having previously rejected a claim procedure, the court approved a claims process paying settlements directly to class members concurrent in time with the notice provided). In this instance, Defendant has all of the information necessary to process claims to the class members, with the possible exception of up-to-date addresses for the 18 former employees; i.e., Defendant possesses a record of the number of hours worked by each employee in the relevant time period, the rate at which each worked, and the aggregate hours worked by all class member during the same period. Requiring submission of a claim form by present employees regarding the Rule 23 class appears to serve no legitimate purpose.

The claims process set out by the parties does serve a purpose as to the FLSA action. As earlier indicated, the FLSA requires collective action members to give "consent in writing to become a party" and for such consent to be "filed in the court in which such action is brought." 29 U.S.C. § 216(b). Such a process should be preserved in any future motion for approval of class settlement.

### E. Fundamental Fairness, Adequacy, and Reasonableness of the Settlement Agreement

In order for this settlement to be approved, Plaintiff must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. *Hanlon*, 150 F.3d at 1026 (citation omitted). "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id* at 1026 (citation omitted).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness"; consideration of the *Hanlon* factors in not enough. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who

class counsel had a duty to represent." *Id.* To that end, the Ninth Circuit in *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011) ("Bluetooth"), identified three "subtle signs that class counsel have allowed pursuit of their own self-interests … infect the negotiations": (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a possible reversion of unclaimed fees to the defendant. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Bluetooth*, 654 F.3d at 947).

At the preliminary approval stage, the Court's consideration of the above-articulated inquiries is less probing than required for final approval; it may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litg., Second § 30.44 (1985)).

*1. The Strength of Plaintiff's Case*

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted).

Plaintiff has presented little information for the Court to consider in determining the strength of Plaintiff's case. Instead, Court must rely upon Plaintiff's declaration that each of Defendant's alleged policies impacted the class as a whole. Similarly, the Court must rely on the two hours of overtime per week and one missed meal period per week estimates that the parties have provided without any explanation of how those estimates were reached. Without more information this Court is limited in its determination of the strength of Plaintiff's case.

That limitation in mind, the Court notes the Defendant's policy refusing to pay overtime for travel time – if proved – would violate the FLSA and California labor law.

*2. The Extent of Discovery Completed; and the Risk, Expense, Complexity, and likely Duration of Further Litigation*

The Court should lean in favor of a settlement where evidence is presented that a considerable amount of discovery has been conducted "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma*, 913 F.Supp.2d at 977 (citation omitted).

With regard to the scope of the discovery conducted, class counsel contends that the settlement "was reached after countless discussions, exchanges of correspondence, and both formal and informal discovery. Plaintiff's [c]ounsel thoroughly reviewed employee time and pay records, employee handbooks, and policies and procedures. Plaintiff's [c]ounsel contacted [putative c]lass [m]embers." Cohen Decl. at ¶ 21. The Court is concerned that the extent of discovery that class counsel has engaged in is not fully reflected to the Court in the motion for preliminary approval or the Settlement Agreement. For instance, although counsel has contacted putative class members, no evidence of interactions with putative class members have been submitted in support of Plaintiff's motion. Indeed, as this Court has noted, class counsel relies heavily upon "information provided by the Named Plaintiff and Defendant" and "assumes 2 hours of [undercompensated] overtime worked per week," "one missed meal period per week," and "one missed rest period per week, for approximately 3,000" workweeks worked.  Cohen Decl. at ¶¶ 29, 30. The Court is concerned that counsel has not presented documentation to convince the Court that Plaintiff has considered sufficient information to make an informed decision about fairness of the settlement. *See In re Mego Financial Corp. Sec. Litg.*, 213 F.3d 454, 459 (9th Cir. 2000).

As a general matter, approval of a settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004). The uncertainty of going to trial generally, although present in this case, is not as visible as the shroud of uncertainty that hangs over this case as a result of the limited information that has been provided to the Court. Without information about the injuries

1 suffered by the absent class members, this Court cannot determine how complicated the proof in

2 this matter would be or how long of a trial to anticipate.

3 *3. The Risk of Maintaining Class Action Status throughout Trial*

4       Under Rule 23, the court may revisit its prior grant of certification at any time before

5 final judgment. Fed.R.Civ.P. 23(c)(1)(C) ("An order under that grants or denies class

6 certification may be altered or amended before final judgment"). Class counsel "assumes a 50%

7 probability of success in certifying the [putative c]lass" "given the state of the law and risks

8 associated with certification at trial." The Court agrees that there is some risk that Plaintiff would

9 not be able to maintain class certification through the course of litigation. This factor weighs in

10 favor of approval.

11 *4. The Amount Offered in Settlement*

12       The amount offered in settlement is generally considered to be the most important

13 considerations of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4

14 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173,

15 1178-79 (9th Cir. 2013). To determine whether that settlement amount is reasonable, the Court

16 must consider the amount obtained in recovery against the estimated value of the class claims if

17 successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal.

18 Apr. 27, 2015) (quoting *In re Mego*, 213 F.3d at 459). Even a fractional recovery of the possible

19 maximum recovery amount may be fair and adequate in light of the uncertainties of trial and

20 difficulties in proving the case. *In re Mego*, 213 F.3d at 459 (approving a settlement that was

21 assumed to be roughly one-sixth of the maximum potential recovery); *Rosales v. El Rancho*

22 *Farms*, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (approving a settlement with a class

23 payment that was roughly one-quarter of the maximum potential recovery); *Rojas v. Zaninovich*,

24 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement with a class

25 payment that was roughly one-half of the maximum potential recovery); *In re Celera*

26 *Corporation Securities Litigation*, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015)

27 (approving a settlement with a class payment of approximately eight percent of the maximum

28 potential recovery).

The total settlement fund value for the proposed settlement is $150,000. $87,000.00 will be allocated to the net settlement fund to pay out class member claims. At least $60,900.00 (70% of the net settlement fund) will be dispersed to class members who submit valid claims. The average dispersal amount will be slightly less than $2000.00 per claimant. If class members making up less than 70% of the total work weeks worked in the class period submit claims, the average per-claimant recovery will rise.

Plaintiff projects a maximum litigation recovery of $325,000. However, as noted above, the violation rates for the failures to pay overtime, rest period violations, and meal period violations are all in question.[10] Without further information regarding violation rates, this Court cannot determine whether the proposed settlement amount fairly compensates the putative class members for their injuries. In light of the fact that Defendant possesses and class counsel has reviewed the time records relating to the underpayment of overtime for the relatively small number of class members, the Court is unsatisfied with an assumption that each class member has suffered two hours of overtime underpayment per week. This factor weighs against approval of the settlement agreement.

*5. The Experience and Views of Counsel*

As addressed above, class counsel is experienced in wage and hour class action litigation. He believes that "the proposed Settlement of $150,000.00, [i]s fair and adequate and in the best interest of Class Members." The recommendation that the Settlement be approved is entitled to significant weight and supports approval of the agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). This consideration weighs in favor of approval of the settlement agreement.

*6. The Presence of Subtle Signs of Collusion*

---

[10] That said, even if the maximum settlement value were triple what class counsel projects it to be – which would result in a minimum settlement payment to the putative class representing approximately six percent of that maximum recovery estimate – that settlement figure would not be outside the realm of possible approval considering the possible difficulties in Plaintiff's proof of this case. That is especially true in light of the significant amount of money that would be distributed to each class member. Such proof would weigh in favor approval of the settlement agreement.

First, the Court looks to whether class counsel would receive a disproportionate distribution of the settlement. Counsel seeks 33.33% of the gross fund - $50,000.00 in fees. The settlement agreement guarantees the putative class approximately 41% of the gross fund – $60,900.00. The attorney fee amount, although significantly above the benchmark for this Circuit, (*Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same)) is not unreasonable as an upper bound.

The settlement agreement discloses no clear sailing arrangement.

The Court is concerned that a portion of the settlement fund is reversionary. In fact, if fewer than 100% of the absent class members decide to participate in the Settlement, funds revert to the Defendant. Claims made settlements with reversions to a defendant are strongly disfavored. *See Lemus v. H&R Block Enterprises LLC.*, 2012 WL 3638550, at *5 (N.D. Cal. Aug. 22, 2012). If unclaimed funds are to revert to a defendant the parties should explain why those funds should revert to Defendant. *See Dudum v. Carter's Retail, Inc.*, 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015) (citing *Flores v. Alameda Cnty. Indus. Inc.*, 2015 WL 3763605, at *3 (N.D. Cal. June 16, 2015). The parties have made no attempt to do so.

Other courts in this District have noted, and this Court agrees, that where "a statute's objectives include deterrence, as does the FLSA's, 'it would contradict these goals to permit the defendant to retain unclaimed funds.'" *Khanna v. Inter-Con Sec. Sys. Inc.*, 2012 WL 4465558, at *11 (quoting, *inter alia*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)); *see LaParne v. Monex Deposit Co.*, 2010 WL 4916606, at *4 (C.D. Cal. Nov. 29, 2010) ("Relatively low interest in settlement does not mean that [a] [d]efendant should receive a windfall benefit as a result of absent class members failing to submit claims" in light of the deterrent goals of the FLSA.) The Settlement Agreement does not separate the settlement fund based on claims; it simply proposes to distribute payments with respect to all of the claims based on weeks worked by the class members.

In addition to the three factors articulated in *Bluetooth*, it is appropriate for the court to consider the procedure by which the parties arrived at their settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or

1    fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (citing Manual for

2    Complex Litigation (Fourth) § 21.6 (2004)). Participation in mediation prior to a settlement

3    "tends to support the conclusion that the settlement process was not collusive." *Placios v. Penny*

4    *Newman Grain, Inc.*, 2015 WL 4078135 (E.D. Cal. July 6, 2015) (citation omitted). In this

5    instance the parties did not engage in mediation but, "given the size of the class and the amount

6    at issue, the Parties engaged in settlement discussions directly." ECF No. 43 at 11. In light of the

7    cost of mediation and the relatively low value of the action, the decision to negotiate directly is

8    reasonable. That said, because the negotiation was direct and the settlement took place prior to

9    certification, the Court reviews this agreement without a presumption of non-collusion.

10           These considerations weigh against approval of the settlement agreement.

11   *7. Conclusion*

12           The Court is unconvinced that this settlement falls within the range of possible approval.

13   In order for the settlement to be preliminarily approved, the following must be addressed: (1) the

14   settlement must (a) compensate each class member for the actual overtime underpayment

15   suffered or (b) class counsel must explain why such compensation is impossible or impracticable

16   and detail how he came to assume that two hours of overtime were underpaid per week; (2) class

17   counsel must detail how he came to assume that one meal period and one rest period were

18   missed per week; (3) the settlement must eliminate the claim form submission requirement for

19   the Rule 23 class members presently employed by Defendant or explain the need for it; (4) the

20   settlement must create separate funds for payment of the Rule 23 claims and the FLSA claims;

21   (5) the portion of the settlement attributed to FLSA violation cannot revert to the Defendant if

22   unclaimed; the parties may remove the reversion entirely or name an appropriate *cy pres*

23   recipient for unclaimed funds.

24   **F. Attorney Fees and Class Representative Award**

25           As the Court earlier alluded to, it has some concern regarding class counsel's anticipated

26   request for attorneys' fees based on one-third of the net settlement fund in light of the fact that

27   the benchmark for such an award is twenty-five percent. *See Bluetooth,* 654 F.3d at 942. Despite

28   this concern, the Court need not resolve this matter at the preliminary approval stage, since the

propriety of the fee request is an issue that can be determined at the Final Fairness Hearing.
However, Plaintiffs' counsel should be mindful of this issue and should be prepared to present a
lodestar calculation in connection with their motion for attorneys' fees and for final approval.

Incentive awards for class representatives "are fairly typical in class action cases" and
appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk."
*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The reasonableness of an
representative award is determined by considering the proportionality between the award to the
representative and to the class. At this stage of the proceedings, and considering the estimated
per-class-member recovery of $2,000.00, a service award of $3,500.00 would be well within the
realm of reasonableness. *See Willner v. Manpower Inc.*, 2015 WL 3863625, at *8-9 (N.D. Cal.
June 22, 2015); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal.
Oct. 22, 2012) (noting that multiple courts in the Northern District of California have treated
representative awards of up to $5,000.00 to be presumptively reasonable).

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for Rule 23 class certification is GRANTED;

2. Plaintiff's motion for FLSA collective action conditional certification is GRANTED;

3. Plaintiff's motion for preliminary approval of class settlement is DENIED without
   prejudice;

   a. Plaintiff is granted 45 days from the date of this order to file an amended motion
      for approval of class and collective action settlement, addressing the issues
      discussed herein. Plaintiff is not required to discuss class or collective action
      certification.

IT IS SO ORDERED.

Dated:   October 8, 2015                         _____
                                                 SENIOR  DISTRICT  JUDGE