IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NICHOLAS MILLAN, on behalf of himself and others similarly situated,** | 1:12-cv-01821-AWI-EPG |
| Plaintiff, | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION AND COLLECTIVE** |
| v. | **ACTION SETTLEMENT AND GRANTING MOTION FOR** |
| **CASCADE WATER SERVICES, INC.; and DOES 1 to 50, inclusive,** | **ATTORNEYS' FEES, COSTS, AND REPRESENTATIVE SERVICE** |
| Defendants. | **PAYMENT** |

_____/

## I. Introduction

This Court granted preliminary approval to Plaintiff's Federal Rule of Civil Procedure[1] 23 class and FLSA collective action settlement on January 14, 2016. In that order, the Court set out a schedule of dates for giving of class notice, receipt of FLSA opt-ins, filing of a final approval motion, and holding of a final fairness hearing. Each of those events has taken place in accordance with the schedule set out by the Court. No class member was present at the final fairness hearing on May 31, 2016, and no objections to the settlement have been filed. Now pending before this Court is Plaintiff's unopposed motions for final approval of the settlement in this matter and for attorneys' fees, costs, and representative service payment. The Court has reviewed both motions. Plaintiff's motion for final approval will be granted in full. Plaintiff's motion for attorneys' fees, costs, and representative service payment will be granted in full.

_____

[1] Unless otherwise noted, any reference to "Rule" or "Rules" refers to the Federal Rules of Civil Procedure.

## II. Background

### A. Factual Background

As set forth more fully in this Court's October, 8, 2015 order, *see* Doc. 47, Plaintiff and the class members are all maintenance technicians, employed by Defendant's water treatment company to service various work sites for clients around California. Class member duties include cleaning, plumbing, electrical, landscaping, and general maintenance of client sites. Each is paid on an hour basis as non-exempt employees.

Because each class member serviced multiple client sites, transportation between sites was required. Plaintiff has alleged that Defendant held a policy of excluding travel time from calculation of hours worked in a day such that overtime was not paid when a class member's commute and on-site labor time exceeded eight hours in a day or forty hours in a week.

Next, Plaintiff alleged that he and other class members were told to take thirty-minute lunch breaks and required rest breaks but that they were often too busy with work to take full, uninterrupted meal and rest breaks.

Class members were required to complete work orders and daily and weekly time sheets. The daily time sheets contained: "a call number, job status, client name, site number, start time, end time, hours per job, hours per activity, total hours for the day, and start and end times of the lunch break." Doc. 47 at 3.

### B. Settlement Agreement and Anticipated Result

The preliminary approved class definition is as follows:

Any person who, at any point between November 6, 2008 and February 21, 2014, inclusive, is or was employed by Cascade Water Services, Inc. in California as a Technician or other similar position.

Doc. 51-2 at 5.

The parties have agreed to an all-in settlement, without a reversion, in a gross settlement amount of $150,000.00. See Doc. 52 at 10, 21. The settlement agreement provides for the following deductions from the gross settlement fund: attorneys' fees in the amount not to exceed

$50,000.00, Doc. 51-2 at 25; costs in an amount not to exceed $1,000.00, Doc. 51-2 at 25; a class representative service award in an amount not to exceed $3,500.00, Doc 51-2 at 25; claims administrator costs in an amount not to exceed $5,500.00, Doc. 51-2 at 26; and PAGA payments to the LWDA in the amount of $3,000.00,[2] Doc. 51-2 at 26-27. Assuming that the Court approves all of the deductions from the gross settlement amount, the net settlement fund will contain $87,000.00 to be distributed between forty-nine of fifty-one[3] identified class members. See Doc. 54 at 6, 9.  Because this action involves a Rule 23 settlement class and a Fair Labor Standards Act ("FLSA") collective action settlement group, the net settlement fund was divided into two funds: (1) a Rule 23 fund in the amount of $57,420.00 or sixty-six percent of the net settlement fund and (2) a FLSA fund in the amount of $29,580.00 or thirty-four percent of the net settlement fund.

The Rule 23 class members are not required to take any action to receive their pro rata share of the settlement fund. If the settlement is approved, a check will be mailed to the address on file for each class member. In exchange, each of the class members will release all California law labor related claims, under the Labor Code, PAGA, and the UCL, for the period from November 6, 2008 to February 21, 2014. No class member has opted out of the settlement agreement.

The FLSA collective action component of this action requires class members to opt-in to receive a portion of the settlement amount and to release their rights under the FLSA. Of the fifty-one identified class members, twenty-seven submitted valid FLSA collective action opt-in forms. Those twenty-seven employees release Defendant from all liability from all federal law labor related claims under the FLSA for the period from November 6, 2008 to February 21, 2014. The unclaimed money from FLSA settlement fund will be distributed to settlement class members on a pro rata basis. Doc. 51-2 at 21.

---

[2] A PAGA payment in the amount of $1,000.00 will be allocated to distribution to class members on a pro rata basis based on the number of work weeks in the class period. Doc. 51-2 at 27.

[3] Fifty-one notice packets were mailed to class members. See Decl. of  Kelsey E. Skey, Doc. 54-10  ("Skey Decl.") at ¶ 8. Of those notice packets, only two were ultimately undeliverable. Skey Decl. at ¶ 12. Skip-traces were performed as to both of the returned notice packets in an attempt to find updated mailing addresses. Skey Decl. at ¶ 10. Both skip-traces were unsuccessful. Skey Decl. at ¶ 12.

Class counsel has estimated that the average Rule 23 settlement payment will be $1,125.88 and the average FLSA settlement payment will be $1,095.56. Doc. 54 at 9.

Any settlement checks not cashed or deposited within 180 days of issuance "will be distributed [to] the State of California's Department of Industrial Relations unclaimed property funds," Doc. 51-2 at 29, and "will be held until claimed by the [c]lass [m]ember." Doc. 54 at 7.

***C. Final Fairness Hearing***

The Court held a final fairness hearing on May 31, 2016 at 1:30 p.m. No class member was present. No objections were raised to the settlement.

**III. Final Approval of Settlement Agreement**

***A. Legal Standard***

*1. Rule 23 Class Action Settlement*

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and internal quotation marks omitted).   However, "[t]he claims, issues, or defenses of a certified class may be settled … only with the court's approval" "after a hearing and on a finding that it is fair, reasonable, and adequate."  Fed. Civ. P. 23(e). When a settlement is reached by the parties prior to certification of a class, the court must confirm "the propriety of the [class] certification and the fairness of the settlement" to protect the absent class members. *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011) (When settlements are reached prior to certification "an even higher level of scrutiny" is required to determine the fairness of the agreement.); *In re Mego Fin. Corp. Sec. Litig.* ("*In re Mego*"), 213 F.3d 454, 458 (9th Cir. 2000) (same).

The Rule 23 class settlement generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be imparted upon the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive,

without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014). In the second phase, the court holds a full fairness hearing where class members may present objections to class certification or to the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate and the settlement is fair, reasonable, and adequate such that the parties should be allowed to settle the class action pursuant to the terms of the settlement agreement. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

## 2. FLSA Collective Action Settlement

As the Court has previously noted, Doc. 47 at 16, the procedure settling a FLSA collective action is less defined and generally less stringent than the procedure for settling a Rule 23 class action. *See also Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, 136 S.Ct. 1036, 1045 (2016) (The Supreme Court "assume[d], without deciding … that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under [Rule 23].") That said, a plaintiff seeking to represent other employees in a collective action must be representative of the other employees; a FLSA representative action may only be pursued (or settled) by an employee on behalf of other employees that are "similarly situated" and have filed written consent to join the action. 29 U.S.C. § 216(b); *see Valladon v. City of Oakland*, 2009 WL 2591346, *7 (N.D. Cal. Aug. 21, 2009).

Because the FLSA action is opt-in and because it does not waive the claims of any employee that has not given consent to be part of the action, the Court need not take the same fiduciary role on behalf of the absent class members that it does in the Rule 23 context. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 906 n. 9 (9th Cir. 2004). Although the district court has some obligation to ensure the fairness of the settlement, *see Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n. 8 (1946), the Ninth Circuit has not spoken directly to the standard that applies to

whether a FLSA settlement should be approved. In light of the Ninth Circuit's silence, most district courts in this circuit apply the standard set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982), requiring the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See, e.g.,Otey v. CrowdFlower, Inc.*, 2016 WL 304747, *3 (N.D. Cal. Jan 26, 2016); *Rodriguez v. SGLC Inc.*, 2014 WL 229221, *1 (E.D. Cal. Jan. 17, 2014); *Shea v. Ryla Teleservices*, 2012 WL 4210291, *2 (E.D. Cal. Sept. 18, 2012). Despite the FLSA fairness inquiry being nominally different from the Rule 23 fairness inquiry, "many courts begin with the well-established criteria for assessing whether a class action settlement is "fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Selk v. Pioneers Memorial Healthcare Dist.*, --- F.3d ----, 2016 WL 519088, *3 (S.D. Cal. Jan. 29, 2016) (citing *Otey v. CrowdFlower, Inc.*, 2015 WL 4076620 (N.D. Cal. July 2, 2015)).

**B. Discussion**

This Court has conducted a final fairness hearing. No class member was present at the hearing and no objections have been filed. Despite the absence of objections, the Court has conducted an in-depth review of the settlement agreement in this action. Conditional class certification is appropriate as to the Rule 23 claims. Conditional collective action certification is appropriate as to the FLSA claims. The proposed settlement is fair, reasonable, and adequate as to the Rule 23 and FLSA claims. The attorneys' fees, costs, and representative service award are all reasonable and justified by the evidence presented. For those reasons, as more fully set out herein, Plaintiff's motions for final approval and fees, costs and service award will be granted.

*1. Rule 23 Class Certification*

Class certification requires a showing of two sets of requirements. First, Rule 23(a) requires a showing of numerosity, commonality of law or fact, typicality of the representative plaintiff's claims, and adequacy of representation. Fed. R. Civ. P. 23(a) Second, the action must fit within one of the "types of actions" set forth by Rule 23(b). Fed. R. Civ. P. 23(b).

The parties went through three rounds of motions for class certification. *See* Docs. 31, 43, 51. In the Court's October 8, 2015 order, on the second round of certification motions, it

thoroughly considered each of the Rule 23(a) requirements and found that this action appropriately fell within Rule 23(b)(3). Based on the Court's consideration of the Rule 23 requirements at the preliminary approval stage in combination with the information provided in Plaintiff's motion for final approval, the Court is satisfied that the Rule 23(a) requirements are met, that common issues predominate and that a class action is the superior vehicle to litigate the claims at issue in this action.

*a. Numerosity*

A class need only be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). Consistently in this litigation, this Court and the Magistrate Judge have found that the class is sufficiently numerous. *See* Docs. 36 at 9, 47 at 8-9. Since those determinations, the class has only grown. *Compare* Doc. 36 at 9 (noting that the putative class appeared to be approximately 44 individuals) *with* Decl. of Darren Cohen, Doc. 54-1 ("Cohen Decl.") at ¶ 45 (noting that 51 class members have been identified). The class is sufficiently numerous.

*b. Commonality and Typicality*

In its October 8, 2015 order, the Court expressed concern as to the limited evidence before it of injury to the class members from either missing meal period or being unlawfully paid at a regular rate for overtime work. Doc. 47 at 10-12. The Court indicated that, based on the evidence before it, it appeared as though Plaintiff's counsel had conducted limited discovery. It indicated that a concern existed as to whether Plaintiff's claims were typical of the class. In response, counsel provided a declaration outlining his discovery process in this case. Class counsel explained that he interviewed Plaintiff and a sample of class members regarding the frequency of underpayment of overtime and meal and rest period denial. He also reviewed Defendant's written policies and employee time and pay records. Counsel explained that a need existed to approximate overtime and mandatory break figures because of class members' regular failures to accurately record driving time and meal and rest periods, and the variance in daily workload and commute distance. Based on class counsel's calculation, approximately one meal break and one rest break was missed per employee per week  as a result of Defendant's meal and

rest break policy and workload, and two hours of overtime was undercompensated per employee per week as a result of Defendant's driving time compensation policy.

In order to satisfy the commonality requirement, "questions of law or fact" must exist that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality normally "requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citations and internal quotation marks omitted). As the Court noted in its October 8, 2015 order, "[i]n the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice." Doc. 47 at 10 (citing *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 513 (E.D. Cal. 2014)). Plaintiff has showed and, for purposes of settlement, Defendant does not dispute that Defendant had a uniform policy paying travel time at the normal rate of pay even if it total work time exceeded eight hours in one day or forty hours in one week. Similarly, Plaintiff has showed and, for purposes of settlement, Defendant does not dispute that Defendant uniformly provided work assignments to class members in a manner that occasionally resulted in class members missing meal and rest breaks. Whether those policies resulted in under-compensation for overtime work or meal and rest period violations are common questions sufficient for certification of a class. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1020 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."); *Benedict v. Hewlett-Packard Co.*, --- F.R.D. ----, 2016 WL 1691893, *10 (N.D. Cal. 2016).

The typicality requirement is satisfied if "the claims and defenses of the representative parties are typical of the defenses of the class…." Fed. R. Civ. P. 23(a)(3). Effectively, the typicality inquiry is whether the representative's claims are "reasonably co-extensive with those of the absent class members…." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In this instance, Plaintiff has shown that the class members all suffered under the same policy. Although the extent of the injury varied from member to member, the injuries all arose from the

same course of conduct by Defendant. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff's claims are reasonably co-extensive with those of the class. The typicality requirement is met.

*c. Adequacy*

The adequacy requirement is met if the class representative and class counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are normally asked to determine adequacy: "(1) do the named plaintiff[] and [his] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Because Plaintiff and the class have been injured by the same policy and seek to recover the same damages, there is no indication that any conflict exists between Plaintiff and the class. Similarly, there is no indication that class counsel has any conflict of interest with the class. Next, the named plaintiff and class counsel have diligently pursued relief in this action and have arrived at a favorable settlement, as discussed in more depth below. The adequacy requirement is met.

All of the Rule 23(a) requirements are satisfied.

*d. Predominance and Superiority*

The matter was conditional certified at the preliminary approval phase as a Rule 23(b)(3) class. Doc. 47 at 13-14. In order to maintain a Rule 23(b)(3) class action the court must find that (1) the common questions of law or fact predominate over issues affecting only individual members and (2) that a class action is the superior vehicle for litigating the claims at issue. Fed. R. Civ. P. 23(b)(3). The Court made such a finding. Specifically, in its October 8, 2015 order, this Court observed that common questions of law and fact predominated over the individual issues and that—based on the relatively small maximum claim value—a class action is the superior method of adjudicating the claims presented. Doc. 47 at 13-14. Those determinations remain; common questions predominate and a class action is the superior vehicle for litigation of the claims at issue.

Conditional certification of the Rule 23 class is confirmed for the following class:

Any person who, at any point between November 6, 2008 and February 21, 2014, inclusive, is or was employed by Cascade Water Services, Inc. in California as a Technician or other similar position.

Doc. 51-2 at 5.

*2. FLSA Collective Action Certification*

FLSA collective action certification requires a showing that the named plaintiff is similarly situated to other employees of the same employer. 29 U.S.C. § 216(b). In this Court's October 8, 2015 order, it conditionally certified the FLSA class, making the finding that Plaintiff is similarly situated to other facilities maintenance technicians in Defendant's employ. Doc. 47 at 16. This action involves facilities maintenance technicians who were all subject to the same illegal policy or plan. *See Feaver v. Kaiser Foundation Health Plan, Inc*. 2016 WL 324176, *3 (N.D. Cal. 2016) (certifying a FLSA class where the employees were all subject to the same policy or plan) (citation omitted); *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 , 471 (E.D. Cal. 2010). The Court confirms that Plaintiff is similarly situated to Defendant's other maintenance technician employees. FLSA collective action certification is granted.

*3. Sufficiency of the Notice Afforded*

Before a proposed settlement is approved, Rule 23(c)(2)(b) and (e)(1) require the Court to ensure that notice is directed "in a reasonable manner to all class members who would be bound by the" proposed settlement and that such notice provides the information necessary to make an informed decision regarding participation in the action. As described in the Court's October 8, 2015 order, additional explanation of the claims is necessary when a settlement purports to resolve FLSA and California Labor Code claims in a hybrid action. Doc. 47 at 17 (citing *Murillo*, 266, F.R.D. at 472).  The Court previously approved the substance of the notice packet, noting that it informed class members of how to receive FLSA and Rule 23 settlement payments, the difference between the FLSA opt-in process and the Rule 23 opt-out process, and the rights that class members give up to receive each payment. *See* Doc. 52 at 2. Based on the fact that more than half of the FLSA class members actually submitted FLSA claim forms, it appears that the notice was successful in informing the class members of their rights and how to participate, decline to participate, or object in the action. Further, based on the large number of FLSA claims,

1  it is equally clear that the notice procedure used— conducting a national change of address

2  search, mailing to most up to date addresses, and conducting a skip trace and remailing returned

3  mail—was successful in affording notice to as many of the class members as possible.

4       The Court is satisfied that the notice given was substantively sufficient and sent in a

5  manner calculated to impart notice.

6  *4. Settlement Agreement Fairness*

7       In conducting a fairness determination pursuant to Rule 23(e) the Court considers: "(1)

8  the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of

9  further litigation, (3) the risk of maintaining class action status throughout the trial; (4) the

10 amount offered in settlement; (5) the extent of discovery completed and the stage of the

11 proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

12 participant; and (8) the reaction of the class members to the proposed settlement." *In re Online*

13 *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting, *inter alia*, *Churchill*

14 *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). When settlement occurs before

15 class certification the court must take extra care to ensure that "the settlement is not the product

16 of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 946.  The same

17 considerations guide the Court's determination of whether the settlement represents "a fair and

18 reasonable resolution" of the alleged FLSA violations. *Selk*, 2016 WL 519088, *4-9; *see Lynn's*

19 *Food Stores, Inc.*, 679 F.2d at 1355. In the FLSA context, before the Court can approve a

20 settlement, it must make the preliminary finding that there is a bona fine dispute over whether

21 the FLSA provisions at issue were actually violated. *Selk*, 2016 WL 519088, *4.

22 *a. Bona Fide Dispute Over Violation of FLSA Provisions*

23      A bona fide dispute exists over whether Defendant has violated the FLSA. Plaintiff FLSA

24 collective action claims are that Defendant has (1) failed to compensate technicians at time and a

25 half rates for work in excess of forty hours per week for travel time in violation of 29 U.S.C. §

26 207(a)(1), and (2) failed to keep records of employee wages, hours, and other conditions and

27 practices of employment necessary to accurately determine the wages and hours of employment

28 of Plaintiff and other technicians in violation of 29 U.S.C. § 211(c). Both theories are predicated

on the contention that all of the travel time of each technician is compensable. Defendants'

facilities maintenance technician employees drive from their respective homes to the first

scheduled job site. Doc. 28 at 2. Each then drives from job site to job site throughout the day.

Doc. 28 at 2. After the technician performs his or her final scheduled job of the day, that

technician drives home. Doc. 28 at 2. In such a situation there is a significant question as to

whether the commute time to the first job site and from the final job site are compensable (and,

incidentally, whether those hours must be recorded). *See*, *e.g.*, *Novoa v. Charter Commc'ns,*

*LLC*, 100 F.Supp.3d 1013, 1019-1021 (E.D. Cal. 2015) (holding that commute time in a

company vehicle is not compensable unless it is mandatory). Success on the FLSA claims could

be limited insofar as they are premised on pre-job site and post-job site commute time. There is a

bona fide dispute regarding liability for the FLSA claims.

*b. The Strength of Plaintiff's Case*

The first factor, the strength of Plaintiff's case, favors settlement for the Rule 23 and

FLSA claims. As previously noted, Plaintiff contends that Defendant denied its maintenance

technicians overtime pay for hours spent commuting and maintained a policy that resulted in

denial of meal or rest periods at least once per week. Despite its willingness to settle Defendant

maintains that its policies were lawful at all times during the class period; it had a stated policy

that mandated meal and rest breaks, *see* Decl. of Nicholas Millan, Doc. 54-9 ("Millan Decl.") at

¶ 4 ("I was … told that I could take a thirty [] minute lunch break. However, often times I was

too busy ... to take a full … meal break…."), and it argued that to and from home commute time

is not compensable as a matter of law, Doc. 28 at 2.

Plaintiff's meal and rest period claims would almost certainly face issues of proof. It

appears that Plaintiff would have been forced to argue that, in spite of the facially lawful policy

that Defendant held, Defendant knew that the workload that it gave to technicians occasionally

resulted in missed meal periods even though those technicians occasionally falsely recorded that

a compliant meal period was taken. *See* Doc. 51 at 13 ("Plaintiff and the Class Members

generally recorded meal periods on their time sheets, however, they informed Class Counsel that

some weeks they were provided with an opportunity to take meal periods and sometimes they

were not.") Proving the existence of a policy for commonality purposes, proving liability, and proving damages might be difficult. In the same vein, class members—rather than Defendant— appear to be at least partially responsible for false recordation of meal periods in violation of Defendant's stated policy. Those weaknesses weigh in favor of settlement of the meal period claims.

In similar fashion, Plaintiff's overtime claim, premised at least in part on to-and-from-home commute time is subject to legal challenge. The uncertainty surrounding compensation for commute time weighs in favor settlement of Plaintiff's Rule 23 and FLSA overtime claims.

*c. The Risk, Expense, Complexity, and Likely Duration of Further Litigation and the Risk of Maintaining Class Status*

The risks attendant to obtaining class certification or FLSA collective certification (much less a verdict), if disputed, weigh in favor of approving this settlement. As noted, proving that Defendant maintained an unlawful policy as to either the meal and rest break claim, or the overtime claim would be no easy task. If Plaintiff did ultimately obtain certification and a verdict in this matter, it would not be without expenditure substantial amounts of time in filing motions for class certification, defending potential dispositive motions, and preparing for and conducting a trial. Such a verdict would also be subject to appeal, further delaying recovery to the class members and increasing the cost of litigation. Settlement at this stage of the litigation avoids further delay and largely avoids the great expense that would accompany further litigation of this action. This consideration weighs equally for the Rule 23 class and the FLSA collective action.

The risk and costs inherent in further litigation weighs in favor of settlement.

*d. The Amount Offered in Settlement*

To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego*, 213 F.3d at 459); *see also Officers for Justice v. Civil Service Com'n of City and Cty. of S.F.,* 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.")

Class counsel has approximated (and explained the mechanism for that approximation) that the total maximum recover in this matter is between $325,000.00, Doc. 31-2 at 8, and $398,700.00, Doc. 51-1 at 6, Doc. 54-1 at 6, inclusive of penalties and interest. The gross settlement amount is $150,000.00, of which $87,000.00 will be distributed to the class. There is no possible reversion. The claims administrator has estimated, based on the FLSA claim rate, that the average Rule 23 settlement payment will be $1,125.88, and the average FLSA settlement payment will be $1,095.56. Skey Decl. at 4. The settlement amount that will actually be disbursed to the class members is approximately one-quarter of the predicted maximum recovery amount. That settlement amount is well within the acceptable range. *See, e.g.*, *Garnett v. ADT, LLC*, 2016 WL 1572954, *7 (E.D. Cal. Apr. 19, 2016) (approving a settlement agreement with a class payment of roughly 21 percent of the maximum potential recovery amount); *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (twenty five percent); *In re Celera Corporation Securities Litigation*, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (eight percent).

This factor supports approval of the settlement.

*e. The Extent of Discovery Complete and Stage of the Proceedings*

Courts require the parties to have conducted sufficient discovery to be able to make an informed decision about the value and risks of the action and come to a fair settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). Class counsel has obtained copies of Defendant's "employee handbooks, company memoranda, time and pay records, and policies and procedures…." Cohen Decl. at ¶ 37. Class counsel also interviewed a sample of class members to determine that the named class member's claims were representative. Doc. 51-1 at ¶ 18. By the time the parties reached a settlement, "the litigation had proceeded to a point in which both Plaintiff and Defendant 'ha[d] a clear view of the strengths and weaknesses of their cases.'" Doc. 54 at 15 (citing *In re Warner Commc'ns Sec. Litig.*, 618 F.Supp.735, 745 (S.D. N.Y. 1985)); *see Lewis v. Starbucks Corp.*, 2008 WL 4196690, *6 (E.D. Cal. Sept. 11, 2008).

In this matter, the parties conducted sufficient discovery to be able to make an informed decision about settlement. This factor supports approval of the settlement agreement.

*f. The Experience and Views of Counsel*

The Court must consider the experience and views of counsel regarding the settlement. *See Churchill Vill.*, 361 F.3d 575. Class counsel is experienced, *see* Cohen Decl. at ¶ 40, and is informed about the subject of this litigation, *see* Cohen Decl. at ¶ 37. Class counsel recommends settlement. Although this factor is not afforded much weight,[4] it does weigh in favor of settlement.

*g. The Reaction of the Class Members*

In determining the fairness of a settlement, the Court should consider class member objections to the settlement and the claims rate. *See Larsen v. Trader Joes Co.*, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are favorable to the class. *Richardson v. THD At-Home Services, Inc.*, 2016 WL 1366952, *6 (E.D. Cal. Apr. 6, 2016) (citation omitted). Here, forty-nine of fifty-one notice packets were delivered and no objections or requests for exclusion have been filed. There is no evidence to indicate that any class member is dissatisfied with the proposed settlement.

Plaintiff encourages the Court to consider the class representative's reaction. Doc. 54 at 17. Although a class representative has no veto power, the Court should consider any support or opposition to the settlement by a class representative. *See* Manual Complex Lit. § 21.642 (4th ed. 2016). Mr. Millan has spent approximately fifty hours assisting class counsel and supports the settlement. Doc. 54 at 17-18.

The reaction of the class members and class representative to the settlement has been positive. This factor weighs in favor of settlement.

*h. Absence of Collusion*

---

[4] "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Smith v. American Greetings Corp.*, 2016 WL 2909429, *5 n 5 (N.D. Cal. May 19, 2016) (quoting Principles of the Law of Aggregate Litigation § 3.05 comment (a) (2010)).

1    The Court initially expressed concern regarding the earlier iteration of the settlement
2 agreement, containing a reversion, a seemingly unnecessary claim process, and allowing a
3 roughly one to one attorney fees to class benefit ratio. *See* Doc. 47 at 24. The parties have
4 eliminated those shortcomings. Doc. 52 at 1-2 ("The parties have submitted an amended
5 proposed settlement agreement that wholly ameliorates the Court's concerns.") The operative
6 settlement agreement has no reversion; $87,000.00 will be distributed to the class. The Rule 23
7 class has no claims process, a check is simply sent to each class member. An opt-in procedure
8 exists for the FLSA action, whereby FLSA claims are only waived if the employee opts in. The
9 unclaimed funds allocated to the FLSA fund will be distributed pro rata to the Rule 23 class
10 members. As a result of those changes, the Court's concern that class counsel would benefit
11 more from the settlement agreement than the class members is quelled.

12    As an additional matter, the division of the settlement funds appears reasonable. Thirty-
13 four percent of the net settlement fund is allocated to payment of FLSA claims. The other sixty-
14 six percent of the net settlement fund is allocated to payment of the Rule 23 claims. The class
15 definition is the same for both groups and no preferential treatment appears to be given to either.

16    The Court is satisfied that this settlement agreement is not a product of collusion. This
17 factor weighs in favor of approval of the settlement agreement.

18 *i. Conclusion*

19    The Court finds that the factors set forth by the Ninth Circuit weigh in favor of final
20 approval of the settlement. The settlement is fair, reasonable and adequate as required by Rule
21 23. The settlement is also a fair and reasonable resolution of a bona fide dispute over FLSA
22 violations. Final approval of the settlement agreement will be granted.

23                    **IV. Fees, Costs, and Representative Service Payment**

24    Plaintiff moves for an award of attorneys' fees and costs, and a class representative
25 service payment for the class representative. Plaintiff requests attorneys' fees in the amount of
26 $50,000, amounting to thirty-three percent of the gross fund value. Plaintiff also requests
27 reimbursement for litigation costs in the amount of $677.15. Finally, Plaintiff requests a
28 representative service award in the amount of $3,500.00. Plaintiff's motion will be granted.

**A. Attorneys' Fees**

Rule 23(h) permits the court to "award reasonable attorney's fees and nontaxable costs" in a class action when they "are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even if the parties agree on the amount of a fees award, a district court has an obligation to consider the fees award in the context of the settlement agreement to ensure that it is reasonable. *See In Re Bluetooth*, 654 F.3d at 941. Where the settlement agreement creates a common fund, a "district court 'has the discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating the fee award.'" *Stetson v. Grissom*, --- F.3d ----, 2016 WL 2731587, *4 (9th Cir. May 11, 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). Despite the discretion afforded to the court, the Ninth Circuit recommends that district courts cross-check the award by applying the a second method. *In Re Bluetooth*, 654 F.3d at 944-945.

1. Percentage of the Fund Method.

This Court will apply the percentage-of-the-fund method and cross-check by calculating the lodestar. The "benchmark" award under the percentage-of-the-fund method is twenty-five percent of the fund. *Stetson*, 2016 WL 2731587 at *4; *In Re Bluetooth*, 654 F.3d at 942. A district court may "adjust upward or downward to account for any unusual circumstances involved in the case." *Stetson*, 2016 WL 2731587 at *4; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Factors that would justify departure from the benchmark include, "the benefit obtained for the class," the risk due to the complexity and novelty of the issues presented, "the risk of nonpayment," and awards granted in similar cases. *In Re Bluetooth*, 654 F.3d at 942 (citations omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Chief among those considerations is the benefit to the class. *In Re Bluetooth*, 654 F.3d at 942 (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 434-436 (1983)).

As noted, Plaintiff seeks thirty-three percent of the gross fund amount in fees. That amount exceeds the benchmark; in order to award that percentage of the gross fund, the Court must find that unusual circumstances justify the departure. Class counsel argues that the

1   departure is justified because of their "thorough and zealous pursuit of this case, which included

2   a detailed review and analysis of numerous pages of payroll and timekeeping documents" and

3   because, counsel contends, its lodestar calculation supports a fee award of $128,127.00. Doc 52-

4   2 at 5, Doc. 54-3 at 12.

5         More significantly, the Court looks to the benefit imparted upon the class. Although, at

6   first glance, the gross fund value does not appear high, the average award per class member is

7   significantly higher than most awards in similar cases. *See, e.g.*, *Chavez v. PVH Corp.*, 2015 WL

8   9258144, *2 (N.D. Cal. 2015) (approving a recovery of approximately $130 per class member in

9   a similar action); *Altamirano v. Shaw Industries, Inc.*, 2015 WL 4512372, *2, 5 (N.D. Cal. July

10  24, 2015) ($440 per class member); *Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431,

11  440 (E.D. Cal. 2013) (granting a 33% fees award where the approximate recovery was just over

12  $600 per class member in a similar action). Class counsel achieved a strong outcome for the

13  class. The absence of any objections to the settlement supports that conclusion. *See National*

14  *Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004). This

15  consideration weighs heavily in favor of granting the requested fees award.

16        Next, the Court considers the risks involved with litigating this action. As the Court

17  noted, the legal landscape regarding commute time violations has been uncertain in the last

18  several years. *See Novoa*, 100 F.Supp.3d at 1019-1021 (highlighting that no court had found that

19  commute time was compensable when it was not mandated by the employer); *see also Alcantar*

20  *v. Hobart Service*, 800 F.3d 1047, 1054 ("[T]he level of the employer's control over its

21  employees, rather than the mere fact that the employer requires the employees' activity, is

22  determinative.") (quoting *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000)). Substantial

23  risks were involved in obtaining class certification and a favorable judgment. This consideration

24  weighs in favor of granting the requested fee award.

25        The Court also looks to the contingent nature of the representation. Class counsel

26  declares that his firm took this matter on a contingency basis. They have received no payments

27  for their services or reimbursement for costs incurred for the class.Doc. 54-3 at 2. Class counsel

28

1   has borne the risk of non-payment in this matter since late 2012. This factor weighs in favor of

2   granting the requested fee award.

3          Finally, Plaintiff is correct that Courts in this Circuit have awarded attorneys' fees

4   amounting to 33% of the gross fund where, as here, such an award does not greatly exceed the

5   lodestar and the recovery for the class is substantial. *See, e.g.*, *Richardson*, 2016 WL 1366952,

6   *12 (awarding 30% of the gross fund amount as attorneys' fees where the per-class member

7   award was substantial); *Barbosa*, 297 F.R.D. at 450 (collecting cases in this district that have

8   granted approximately 33% of the gross fund). This consideration supports the requested fees

9   award.

10          The excellent results achieved, the favorable reaction of the class, that class counsel

11   litigated this matter on contingency for nearly four years all support, and that the adjusted

12   lodestar is roughly commensurate the award sought, *see Section IV(A)(2), infra*, all support the

13   requested fees award.

14   2. Lodestar Calculation

15          Although not required of a district court, often district courts conduct a lodestar cross-

16   check to ensure that the percentage based fee is reasonable. *See Yamada v. Nobel Biocare*

17   *Holding AG*, --- F.3d ----, 2016 WL 1579705 (9th Cir. Apr. 20, 2016); *Crawford v. Astrue*, 586

18   F.3d 1142, 1151 (9th Cir. 2009) (the district court may conduct a lodestar cross-check as an aid

19   in assessing the reasonableness of the fee). The lodestar amount is calculated by multiplying the

20   number of hours reasonably expended by a reasonable hourly rate. *Gonzales v. City of Maywood*,

21   729 F.3d 1196, 1202 (9th Cir. 2013). The district court must then determine whether to apply a

22   risk multiplier. *See Yamada*, 2016 WL 1579705, *6 (The court may apply a multiplier to adjust

23   the lodestar figure considering reasonableness factors such as: "the quality of representation, the

24   benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

25   nonpayment.") (citation omitted)*; see also Stetson*, 2016 WL 2731587, *5 ("The district court

26   must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation

27   they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that

28

1 | risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that

2 | meet these criteria is an abuse of discretion.") (citation omitted).

3 | *a. Reasonable Number of Hours*

4 |       Class counsel spent approximately 208 hours litigating this matter and preparing the

5 | settlement.[5] Counsel's time was expended interviewing witnesses, researching causes of action,

6 | investigating Defendant's ownership structure, determining class members' job functions and

7 | duties, drafting pleadings, conducting and reviewing discovery, calculating damage models,

8 | negotiating and drafting settlement agreements, preparing motions for preliminary and final

9 | approval of the settlement agreement, coordinating and overseeing administration of the

10 | settlement, and communicating with defense counsel. Doc. 54-3 at 12-13. All of these items are

11 | reasonable uses of counsel's time. The information provided does not disclose any substantial

12 | redundancies in counsel's use of time. *See also Stetson*, 2016 WL 2731587, *5 ("[T]he district

13 | court should take into account the reality that some amount of duplicative work is 'inherent in

14 | the process of litigating over time.'") (citation omitted).

15 | *b. Reasonable Rate*

16 |       A district court is required to determine a reasonable rate for the services provided by

17 | examining the prevailing rates in the community, charged by "lawyers of reasonably comparable

18 | skill, experience, and reputation." *Sanchez v. Frito Lay*, 2015 WL 4662535, *17 (E.D. Cal. Aug.

19 | 5, 2016) (quoting *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D. Cal 2012)). "The

20 | 'relevant community' for the purposes of determining the reasonable hourly rate is the district in

21 | which the lawsuit proceeds." *Sanchez*, 2015 WL 4662535, *17 (quoting *Barjon v. Dalton*, 132

22 | F.3d 496, 500 (9th Cir.1997)). When a case is filed in the Fresno Division of the Eastern District

23 | of California, the hourly rate is compared against attorneys practicing in the Fresno Division of

24 | the Eastern District of California. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir.

25 | 2009). In the Fresno Division of the Eastern District, the hourly rate for competent and

26 | experienced attorneys is between $250 and $400, "with the highest rates generally reserved for

27 | those attorneys who are regarded as competent and reputable and who possess in excess of 20

28 |

---

[5] 202.2 of those hours are billed to Darren M. Cohen. 6.6 of those hours are billed to Eric Kingsley.

1   years of experience." *Silvester v. Harris*, 2014 WL 7239371, *4 (E.D. Cal. Dec. 17, 2014)

2   (collecting cases); *see Archer v. Gibson*, 2015 WL 9473409, *13-14 n. 6 (E.D. Cal. Dec. 28,

3   2015) ("A current reasonable range of attorneys' fees, depending on the attorney's experience and

4   expertise, is between $250 and $400 per hour, and $300 is the upper range for competent

5   attorneys with approximately 10 years of experience.")

6       Class counsel has requested hourly fees as follows: for Eric B. Kingsley, a partner with

7   Kingsley & Kingsley, APC, in practice since 1996, a rate of $725.00 per hour; for Darren M.

8   Cohen, an attorney with Kingsley & Kingsley, APC, in in practice since 2002, a rate of $610.00

9   per hour. Doc. 54-3 at 12. Both rates are dramatically above the prevailing rate in the Fresno

10  division of this district for attorneys with commensurate experience and expertise. A reasonable

11  fee for Eric Kingsley is $375.00 per hour; a reasonable fee for Darren Cohen is $325 per hour.

12  *E.g.*, *Williams v. Ruan Transport Corp.*, 2013 WL 6623254, at *6 (E.D.Cal. Dec.16, 2013)

13  (awarding $375.00 per hour to attorney with over thirty years of experience and $325.00 per

14  hour to attorney with fifteen years of experience in employment action).

15  *c. Adjusted Lodestar Calculation*

16      Based on the 202.2 hours that Darren Cohen has reasonably spend on this litigation,

17  billed at a rate of $325.00 an hour; and the 6.6 hours that Eric Kingsley has reasonably spend on

18  this litigation, billed at a rate of $375.00 an hour, the lodestar amount is $68,190 (65,715.00 +

19  2475.00). No downward multiplier is justified in this action. This Court need not consider

20  whether an upward multiplier is warranted because counsel seek an award based on the

21  percentage-of-the-fund method. The lodestar cross-check confirms that the 33% award from the

22  gross fund is a fair and reasonable award, consistent with the number of hours reasonably

23  expended and billed at a reasonable rate.

24      Class counsel's requested award of $50,000.00 in attorneys' fees will be granted.

25  **B. Litigation Costs**

26      "[A]n attorney who has created a common fund for the benefit of the class is entitled to

27  reimbursement of reasonable litigation expenses from that fund." *Sanchez*, 2015 WL 4662636,

28  *20; *accord Smith*, 2016 WL 2909429, *9 ("An attorney is entitled to 'recover as part of the

1  award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee

2  paying client.'") (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

3          Class Counsel has submitted an itemized list of expenses. Doc. 54-8 at 2. The itemized

4  costs include filing fees, copies, electronic research, postage, and other office-related costs.

5  Those costs are reasonable litigation expenses. Counsel's request for costs in the amount of

6  $677.15 will be granted.

7  **C. Representative Service Award**

8          Representative service awards are "fairly typical in class action cases." *Rodriguez v. West*

9  *Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see Staton*, 327 F.3d at 977. Granting a

10 service award is discretionary; in doing so the court should consider the time and effort expended

11 by the named plaintiff, and the risk undertaken in serving as named plaintiff. *Staton*, 327 F.3d at

12 977; *In re Mego*, 213 F.3d at 463. The court should also consider the amount of the service

13 award as compared to the average recovery of the class. *In re Online DVD-Rental Antitrust*

14 *Litig.*, 779 F.3d at 947. Incentive awards are particularly appropriate in wage-and-hour actions

15 where plaintiffs undertake a significant "reputational risk" by bringing suit against their present

16 or former employers. *Rodriguez*, 563 F.3d at 958–59.

17         In this case, the class representative has "participated extensively in the prosecution of

18 this action on behalf of the class." Doc. 54-2 at 16. Specifically, he assisted in gathering

19 information, informed counsel of his discussions with other employees, and provided the

20 documentation that he had in his possession regarding Defendant's wage policies. Doc. 54-2 at

21 16. Further, Mr. Millan was actively involved in settlement negotiations.

22         A service award of $3,500.00 is requested for Mr. Millan. That figure is less than the

23 $5,000.00 amount that is presumptively reasonable in this Circuit. *Richardson*, 2016 WL

24 1366952, *13 (citing *Harris v. Vector Marketing Corp.*, 2012 WL 381202, *7 (N.D. Cal. Feb. 6,

25 2012)); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947. Moreover, the proposed

26 incentive award is not dramatically higher than the average class member award.

27         For those reasons, the representative service award of $3,500.00 will be granted to Mr.

28 Millan.

**D. Administration Costs**

Courts routinely award administrative costs associated with providing notice to the class. *E.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 1701349, *17 (N.D. Cal. Apr. 28, 2016); *Odrick v. Union Bancal Corp.*, 2012 WL 6019495, *7 (N.D. Cal. Dec. 3, 2012). The settlement provides for up to $5,500.00 to be paid to CPT Group, Inc., as settlement administrator. That amount is reasonable and will be awarded.

<b>V. Order</b>

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Final Approval of the Settlement Agreement is GRANTED;

2. Plaintiff's request for certification of the Settlement Class is GRANTED and defined as follows:

   Any person who, at any point between November 6, 2008 and February 21, 2014, inclusive, is or was employed by Cascade Water Services, Inc. in California as a Technician or other similar position.

3. The above-defined settlement class has met all of the Rule 23(a) and (b)(3) requirements;

4. The above-defined settlement class is similarly situated for purposes of FLSA collective action treatment;

5. The terms of the proposed Settlement Agreement are found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6. The terms of the proposed Settlement Agreement represent a fair resolution of a bona fide dispute over FLSA violations;

7. The notice provided to the settlement class members, as well as the means by which it was provided, constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure. Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

23

8.  Plaintiff's motion for attorneys' fees, costs, and representative service award is GRANTED;

9.  Plaintiff Nicholas Millan is appointed as a suitable class representative for the settlement class and awarded $3,500.00 as a representative service payment;

10. Darren M. Cohen and Eric B. Kingsley of Kingsley & Kingsley, APC are appointed as class counsel for the settlement class, and are awarded $50,000.00 in attorneys' fees and $677.15 in costs;

11. The settlement administrator CPT Group, Inc., is awarded to up to $5,500.00 for settlement administration costs;

12. The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement;

13. The proposed PAGA penalties of $4,000.00 ($3,000.00 to the State of California Labor Workforce Development Agency and $1,000.00 to the Class) are approved;

14. By means of this Final Approval Order, this Court hereby enters final judgment in this action, as defined in Rule 58(a)(1), Federal Rules of Civil Procedure;

15. The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

IT IS SO ORDERED.

Dated:  May 31, 2016          _____

                              SENIOR DISTRICT JUDGE